**Charles Edward HUNTER, Petitioner–Appellant,**

v.

**UNITED STATES of America, Respondent–Appellee.**

**Henry C. BAILEY, Petitioner–Appellant,**

v.

**John E. NAGLE, Warden, Jeff Sessions, Attorney General for the State of Alabama, Respondent–Appellee.**

Nos. 96–6513, 96–6770.

United States Court of Appeals, Eleventh Circuit.

Dec. 10, 1996.

G. Douglas Jones, Birmingham, AL, for Charles Edward Hunter.

Caryl Privett, Frank M. Salter, U.S. Attorney's Office, Birmingham, AL, David Kris, U.S. Department, Washington, DC, for U.S.

William R. King, Federal Public Defender, Middle District of Alabama Federal Defender Program, Inc., Montgomery, AL, for Henry C. Bailey.

Norbert Hershael Williams, Stephen N. Dodd, Office of the Attorney General, Montgomery, AL, for John E. Nagle and Jeff Sessions.

Before HATCHETT, Chief Judge, and TJOFLAT, KRAVITCH, ANDERSON, EDMONDSON, COX, BIRCH, DUBINA, BLACK, CARNES and BARKETT, Circuit Judges.

CARNES, Circuit Judge:

We heard these cases en banc to decide whether a district court judge is authorized to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214. We answer that question in the affirmative. We also decide that the AEDPA amendments to § 2253(c) and Rule 22(b) apply to all 28 U.S.C. § 2254 cases in which no certificate of probable cause to appeal was obtained under preexisting law before the effective date of the Act, and to all 28 U.S.C. § 2255 cases in which no notice of appeal was filed before that effective date.

## I.  PROCEDURAL HISTORY

### A.  The Bailey Case

Henry C. Bailey is an Alabama inmate who is serving a life sentence imposed in 1991 under Alabama's Habitual Felony Offender Act, see Ala.Code § 13A–5–9 (1975), as a result of his conviction for distribution of a controlled substance in violation of Ala.Code § 13A–12–211 (1975). After exhausting his state court remedies, Bailey filed a 28 U.S.C. § 2254 application for relief in the United States District Court for the Middle District of Alabama on February 24, 1995. Adopting a magistrate judge's report and recommendation that relief be denied, the district court dismissed Bailey's application on July 11, 1996.

Thereafter, Bailey filed a notice of appeal, a motion to proceed in forma pauperis on appeal, and a motion for a certificate of probable cause to appeal. In an August 21, 1996 order, the district court granted Bailey's in forma pauperis motion. By separate order that same date, the district court treated Bailey's motion for a certificate of probable cause as a motion for a certificate of appealability under 28 U.S.C. § 2253(c) and Rule 22(b), as amended. Even though the court granted Bailey a certificate of appealability, it acknowledged that there was an unsettled question of law about whether a district judge is authorized to do so. More specifically, the court noted that § 2253(c)(1), as amended, provides that a "circuit justice or judge" may issue a certificate of appealability, while the amended Rule 22(b) provides that a "district or a circuit judge" may do so. The court warned Bailey that he might be

required to request a certificate of appealability from this Court. He has not done so.

In granting Bailey a certificate of appealability, the district court applied the "substantial showing of the denial of a constitutional right" standard set out in § 2253(c)(2). However, the court did not specify, as required by § 2253(c)(3), which of the multitude of issues Bailey had raised met that standard.

## B. The Hunter Case

In 1990, following a guilty plea, Charles Edward Hunter was convicted in the United States District Court for the Northern District of Alabama of one count of possessing cocaine with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1), and of one count of using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c). He was fined $10,000.00, and sentenced to eighty-four months imprisonment to be followed by five years of supervised release.

In 1991 Hunter filed an initial 28 U.S.C. § 2255 motion for relief from his sentence. The motion was denied, and this Court affirmed that denial. Hunter filed another § 2255 motion in 1991, which was also denied. In 1995, Hunter filed yet another motion for § 2255 relief, which the district court dismissed as "utterly frivolous."

This appeal results from Hunter's latest § 2255 motion, which he filed on March 15, 1996, and the district court denied on April 24, 1996. On May 17, 1996, Hunter filed a notice of appeal and motion to proceed *in forma pauperis*. On May 30, 1996, the district court granted that motion, and it treated the notice of appeal as including an application for a certificate of appealability.

The district court expressed doubt about whether it was authorized to grant a certificate of appealability, stating: "There are substantial internal inconsistencies between the amended § 2253 and the amended Rule 22, which make it unclear whether this court

is intended or indeed has the authority to issue a certificate of appealability from the denial of a section 2255 motion." Nonetheless, "[o]ut of an abundance of caution," the district court certified that Hunter had made a substantial showing of the denial of a constitutional right regarding one issue, which it specified in the order.[1]

## C. The Grant of Review

Because the issue is an important one involving the proper handling of hundreds of cases a year in this circuit, we took the extraordinary step of granting hearing en banc to resolve the matter. We directed the parties in *Bailey* to address the issue of whether a district court is authorized to issue a certificate of appealability in 28 U.S.C. § 2254 cases, and we directed the parties in *Hunter* to address the same issue involving 28 U.S.C. § 2255 cases. We also invited the other two states in our circuit, as well as a number of defender organizations, to file amici briefs. Before reaching the issue for which we granted hearing en banc, we must first resolve a preliminary issue the parties have raised.

## II. THE APPLICABILITY OF THE AEDPA AMENDMENTS TO PENDING CASES

█ In addition to briefing and arguing the issue we posed, Bailey and Hunter contend that the AEDPA amendments to 28 U.S.C. § 2253(c) and to Federal Rule of Appellate Procedure 22(b) are not applicable to their cases, because the proceedings, although not the appeals, were already pending on April 24, 1996, the AEDPA's effective date. In Bailey's case, his application for 28 U.S.C. § 2254 relief was filed before that effective date, but it was not denied and a notice of appeal filed, until after the effective date. In Hunter's case, his motion for 28 U.S.C. § 2255 relief was filed before but denied on AEDPA's effective date, and his notice of appeal was filed after that date.

---

**1.** The district court granted Hunter a certificate of appealability notwithstanding the fact that this is his at least fourth 28 U.S.C. § 2255 motion. The United States has not raised, and neither side has addressed, the question of whether the provisions of the last paragraph of § 2255, as amended, relating to second or successive motions, apply to Hunter's case. We do not decide that issue, nor do we mean to imply any view about it.

■ *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), provides the analytical framework for determining whether newly enacted statutory provisions are applicable to pending cases. A court's first, and sometimes last, task under *Landgraf* analysis is "to determine whether Congress has expressly prescribed the statute's proper reach." *Id.* at ——, 114 S.Ct. at 1505. If Congress has done so, that is the end of the *Landgraf* analysis, and the court simply follows the evident intent of Congress. *Id.* However, where the congressional intent about applicability to pending cases is not evident, or is nonexistent, more is required. The more that is required is application of the judicial default rules specified in *Landgraf,* to which we will return later.

■ Taking the first *Landgraf* step, we look to see if Congress expressly prescribed whether the amendments to § 2253(c) and to Rule 22(b), which are contained in §§ 102 and 103 of the AEDPA, were applicable to pending cases. Congress said nothing one way or the other. Hunter and Bailey[2] do not dispute that there is no express congressional direction on the matter, but they do contend that the AEDPA implicitly indicates an intent not to apply these amendments to pending cases. They point to § 107(c) of the Act. Section 107 sets out special rules for capital cases in certain qualifying jurisdictions, and subsection (c) of it expressly provides that those new rules are applicable to pending cases. The argument is that since Congress expressly provided that § 107 was to apply to pending cases, but did not so provide for §§ 102 and 103, Congress must have intended for those two sections not to apply to pending cases.

We reject that argument. To begin with, we note that the argument assumes that evidence of legislative intent, short of an explicit statutory command about the provision in question, is enough to avoid application of the *Landgraf* judicial default rules. There appears to be a conflict among the circuits, and even within some circuits, about whether *Landgraf*'s first step can be satisfied by evidence of legislative intent other than in an express statutory command. *Compare, e.g., Brown v. Hot, Sexy & Safer Prods., Inc.,* 68 F.3d 525, 538 (1st Cir.1995) (requiring clear statutory language demanding retroactivity), *cert. denied,* —— U.S. ——, 116 S.Ct. 1044, 134 L.Ed.2d 191 (1996) and *Reyes–Hernandez v. INS,* 89 F.3d 490, 492 (7th Cir.1996) (presumption against retroactivity "unless the statute provides explicitly for retroactive application"; requires "clear statement") and *Chenault v. U.S. Postal Serv.,* 37 F.3d 535, 537 (9th Cir.1994) (presumption against retroactivity unless statute's language dictates retroactivity) *with Green v. Nottingham,* 90 F.3d 415, 419 (10th Cir.1996) (considering both language of act and legislative history in search of "unambiguous directive") and *Conservation Law Foundation, Inc. v. Busey,* 79 F.3d 1250, 1270 (1st Cir.1996) (holding that legislative history "left no doubt" that retroactivity was contemplated) and *U.S. v. $814,254.76 in U.S. Currency,* 51 F.3d 207, 212 (9th Cir.1995) (considering legislative history for evidence of "clear congressional intent" to apply statute retroactively). We need not resolve that question, because even assuming that clear legislative intent short of an express statutory command suffices to overcome any of *Landgraf*'s presumptions, there is no clear legislative intent about application of §§ 102–103 of the AEDPA to pending cases.

It is true that § 107(c) specifies that the changes contained in that particular section shall apply to pending cases. But it is equally true that a number of other AEDPA provisions specify that other changes made by the same act do not apply to pending cases. *See, e.g.,* AEDPA § 211 (making changes in restitution law and procedures applicable only to "sentencing proceedings in cases in which the defendant is convicted on or after the date of enactment"); § 235(h) (provisions concerning closed circuit television of court proceedings apply only to cases filed after January 1, 1995); § 435 (provision expanding criteria

---

2. For the sake of simplicity, our discussion will attribute to Hunter and Bailey not only their own arguments but also the arguments on the same issues made in the amicus curiae brief filed joint-

ly by the Equal Justice Initiative of Alabama, the Georgia Appellate Practice and Educational Resource Center, and the Capital Collateral Representative of Florida.

for deporting aliens convicted of crimes of moral turpitude applicable to those "against whom deportation proceedings are initiated after the date of enactment"); § 441 (amendment limiting collateral attacks on deportation orders applicable only where criminal proceedings initiated after the date of enactment); § 903 (making changes in the rate of compensation of appointed counsel in certain capital cases apply only to cases commenced or appeals perfected "on or after the date of the enactment").

The fairest inference from the variety of applicability provisions throughout the AEDPA is that Congress was quite capable of and willing to express its intent about prospective or retrospective application when it had such an intent. *See Landgraf,* —— U.S. at ——, 114 S.Ct. at 1493–94. Where Congress was silent on the subject, as it was regarding the amendments made by §§ 102 and 103, courts must proceed as though Congress either had no intent or chose to refrain from expressing any intent it had. That brings us to *Landgraf*'s second step, application of its judicial default rules.[3]

■ Under the *Landgraf* judicial default rules, a newly enacted statutory provision is to be applied to pending cases, including appeals, unless doing so would give the provisions "retroactive effect." *Id.* at ——, 114 S.Ct. at 1505. If applying the new provision to a pending case would have retroactive effect, then the presumption goes the other way; absent an express congressional command, statutory provisions are not to be given retroactive effect. *Id.* at ——, ——, 114 S.Ct. at 1501, 1505. But "retroactive effect" for these purposes means more than simply the effect of applying a statute to a case that arose before the statute was enacted, and it means more than simply a reduced chance of prevailing in a pending case if the statute is applied. *See id.* at ——, 114 S.Ct. at 1499 ("A statute does not operate 'retrospectively'

merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law.") (citation and footnote omitted); *Lindh v. Murphy,* 96 F.3d 856, 863 (7th Cir.1996) (en banc) (the possibility of an adverse effect is not the definition of "retroactive effect"). For purposes of the *Landgraf* judicial default rules presumption, applying a statute to a pending case has "retroactive effect" only when doing so produces a " 'genuinely' retroactive effect" and constitutes "truly 'retrospective' application." *Id.* at ——, 114 S.Ct. at 1503–04.

In other words, in *Landgraf* analysis, "retroactive effect" is a term of legal art, which does not describe all applications of a statute to preexisting causes of action or pending proceedings. The definition of "retroactive effect" in this context is more narrow than that, and it conveys less of a description of premises than an announcement of a conclusion, an end-of-the-analysis label. As the Supreme Court explained, "The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Id.* at ——, 114 S.Ct. at 1499.

■ Fortunately, the *Landgraf* opinion is more specific than that. It explains that for purposes of the judicial default presumption against retroactive application, a new statute would have a retroactive effect if applying it to a pending case "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at ——, 114 S.Ct. at 1505. We now focus that definition upon the specific provisions of the AEDPA that are at issue in this case.

---

**3.** Hunter and Bailey also put forward a more complex argument concerning the implication of certain provisions of § 107 for the applicability of §§ 102 and 103 to pending cases. Briefly, the argument is that because Congress provided in § 107(a) (in the new 28 U.S.C. § 2264(b)) that only certain specific provisions of § 2254, as amended in §§ 101–106, would apply in § 107

capital case proceedings, Congress must have meant the other §§ 101–106 changes to be inapplicable to pending cases. The Seventh Circuit, sitting en banc, recently addressed and rejected this argument. *Lindh v. Murphy,* 96 F.3d 856, 862 (7th Cir.1996). We agree with the discussion in the *Lindh* opinion and reject the argument for the same reasons.

We realize that the changes involving appeal certificates made by §§ 102 and 103 of the AEDPA are greater as they affect federal inmate § 2255 movants than as they affect state inmate § 2254 applicants. The reason is that preexisting law already required unsuccessful § 2254 applicants to obtain a certificate of probable cause to appeal as a prerequisite to appellate review of a district court judgment denying relief. 28 U.S.C. § 2253 (1995); Fed. R.App. P. 22(b) (1995). The most that §§ 102 and 103 of the AEDPA have done to § 2254 applicants is reduce the likelihood of them obtaining such a certificate, now called a certificate of appealability, and possibly narrow the scope of any appeal that is permitted. *See* § 2253(c)(3).[4]

By contrast, unsuccessful § 2255 movants were not required by preexisting law to obtain a certificate as a prerequisite to an appeal. They could appeal without getting a judge to certify anything about the possible merit of their issues. Sections 102 and 103 of the AEDPA changed that, subjecting § 2255 movants to pre-appeal certification requirements (the same ones that apply to § 2254 applicants). However, because the same analysis applies in both types of cases, and produces the same result, our discussion will make no distinction between § 2254 applicants, such as Bailey, and § 2255 movants, such as Hunter. It is enough for present purposes to assume that the new act makes it materially more difficult for both state and federal inmates to appeal and thereby obtain an appellate review of district court judgments denying collateral relief.

■ With that assumption in mind, and turning to the definition of "retroactive" in *Landgraf*, it is obvious that applying these new certificate of appealability requirements to pending cases would not "increase a party's liability for past conduct," nor would it "impose new duties with respect to transactions already completed." —— U.S. at ——, 114 S.Ct. at 1505; *see Drinkard v. Johnson*, 97 F.3d 751, 766 (5th Cir.1996) (holding that a habeas applicant "cannot argue that the new standards of review attach new legal consequences to [his criminal] conduct by increasing his liability for that conduct or by imposing new duties on him based on that conduct").[5] That leaves only the question of whether application of the new certificate of appealability requirements to pending cases "would impair rights a party possessed when he acted." —— U.S. at ——, 114 S.Ct. at 1505. The key word here, of course, is "rights." If that term is broadly construed

4. In speaking of the possibility that the AEDPA amendments have reduced the likelihood of a § 2254 applicant obtaining the necessary certificate, we are referring primarily to the State of Alabama's contention that the amendments divested district judges of the authority to issue such certificates, thereby removing one of the opportunities an applicant had to obtain a certificate. In speaking of the possibility that the amendments have narrowed the scope of any permitted appeal, we are referring to § 2253(c)(3), as amended, which provides that the certificate must "indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]." That provision may limit the appeal to the issues specified, but we need not decide whether it does; the result of our analysis is the same, regardless.

The result of our analysis is also unaffected by the issue of whether the AEDPA amendments have changed the actual standard for obtaining the necessary certificate. There is some difference of opinion about whether § 2253(c)(2), which provides that a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," modifies preexisting law, which defined the required showing as, a "substantial showing of the denial of [a] federal right," *Barefoot v. Estelle*, 463 U.S. 880, 881, 103 S.Ct. 3383, 3388, 77 L.Ed.2d 1090 (1983) (citation and internal quotation marks omitted) (alteration in original). *Compare Drinkard v. Johnson*, 97 F.3d 751, 756 (5th Cir.1996) (holding that at least in § 2254 proceedings, the standard for issuance of a certificate of appealability after the AEDPA amendments is the same as the standard for issuance of a certificate of probable cause to appeal under preexisting law) *and Reyes v. Keane*, 90 F.3d 676, 679–80 (2d Cir.1996) (same) *and Lennox v. Evans*, 87 F.3d 431, 434 (10th Cir.1996) (same) *with Williams v. Calderon*, 83 F.3d 281, 286 (9th Cir.1996) (stating that the standard for obtaining a certificate of appealability under the AEDPA amendments is "more demanding" than the *Barefoot* standard for certificate of probable cause to appeal). For present purposes, we will assume that the amendments have raised the hurdle for obtaining the certificate that is a prerequisite to an appeal from the denial of relief.

5. We do not have before us, and we do not pretend to address, the question of whether § 2254(d)(1), as amended, applies to pending cases.

to include expectations under preexisting procedural rules, or under rules affecting access to and the propriety of review and remedies, then applying the new certificate of appealability rules to pending cases possibly would have a "retroactive effect." But we know that the term "rights" as used in this context should not be construed broadly so as to sweep within its ambit mere expectation interests under procedural or remedy rules.

■ We know that about procedural rules, because the Supreme Court in *Landgraf* noted that procedural rules "regulate secondary rather than primary conduct," so there are "diminished reliance interests in matters of procedure." *Id.* at ——, 114 S.Ct. at 1502. As a result, "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Id.* at ——, 114 S.Ct. at 1502. Often, usually, but not always. The two illustrative exceptions the Court gave are that a new procedural rule about the filing of complaints should not be applied to a case where the complaint already had been filed under the old regime, and new rules of evidence should not be applied to an already-tried case so as to require an appellate remand for a new trial. *Id.* at n. 29. Those exceptions "reflect the common-sense notion that the applicability of such provisions ordinarily depends on the posture of the particular case." *Id.*

The posture of Bailey's case at the time the AEDPA went into effect is that he, as a § 2254 applicant, had not obtained a certificate of probable cause to appeal under preexisting law. *See Lindh,* 96 F.3d at 863 ("We take it that under *Landgraf* a certificate of probable cause to appeal issued before April 24, 1996, authorizes an appeal, although after April 24 appeal depends on a 'certificate of appealability' under § 102 of the 1996 Act."). The posture of Hunter's case at the time the AEDPA went into effect is that he, as a § 2255 movant, had not filed a notice of appeal under preexisting law. *Cf. United States v. Lopez,* 100 F.3d 113, 117 (10th Cir.1996) (holding that the certificate of appealability amendments to § 2253 do not apply to a § 2255 appeal in which the notice of

appeal was filed before the AEDPA's effective date). Nor are the AEDPA amendments to § 2253(c) and Rule 22(b) changes in evidentiary rules the application of which would require a new trial in these cases. Therefore, viewing § 2253(c) and Rule 22(b) as procedural rules argues strongly for the conclusion that the AEDPA amendments to them should be applied to Bailey's and Hunter's cases.

Characterizing § 2253(c) and Rule 22(b) as remedial provisions does not result in a different conclusion. The Supreme Court in *Landgraf* also said: "When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Id.* at ——, 114 S.Ct. at 1501. The Court gave as an example a prior decision holding that a change in a remedial statute was due to be applied to a case on appeal, even if the result was to deprive the plaintiff of relief granted to him under the law in effect at the time judgment was entered by the district court. *Id.* at ——, 114 S.Ct. at 1501 (citing *American Steel Foundries v. Tri–City Central Trades Council,* 257 U.S. 184, 42 S.Ct. 72, 66 L.Ed. 189 (1921)).

Moreover, the *Landgraf* Court recounted with approval that it had "regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed." *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1501. An example it gave was *Bruner v. United States,* 343 U.S. 112, 116–17, 72 S.Ct. 581, 584–85, 96 L.Ed. 786 (1952), which ordered a case dismissed, though there was jurisdiction for it initially, because the statute upon which that jurisdiction was based had been repealed while the case was pending. *Landgraf,* —— U.S. at ——, 114 S.Ct. at 1501. The reason that "[p]resent law normally governs in such situations [is] because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" *Id.* at ——, 114 S.Ct. at 1502 (quoting *Republic National Bank of Miami v. U.S.,* 506 U.S. 80, 100, 113 S.Ct. 554, 565, 121 L.Ed.2d 474 (1992) (Thomas, J., concurring)).

In applying these principles, we readily conclude that §§ 102 and 103 of the AED-

PA, the amendments relating to certificates of appealability, may be accurately characterized as rules of procedure. They might also be characterized as changes in the law affecting access to and the propriety of prospective relief. Applying such changes to pending cases is not giving them retroactive effect under the *Landgraf* judicial default rules. *See Lindh*, 96 F.3d at 865 ("The Supreme Court consistently applies statutory changes in the law of collateral attack to pending cases, and perforce to newly filed cases that seek relief from judgments entered before the statute's enactment."). Indeed, that conclusion follows even if the certificate of appealability changes are characterized as affecting the jurisdiction of the court of appeals. However the §§ 102 and 103 changes are characterized, applying them to pending cases does not give them "retroactive effect" as that term is used in *Landgraf*, so the presumption that present law applies to present cases governs. *See Lindh*, 96 F.3d at 865 ("To leave the ensuing judgment in force—and to leave all the rules governing primary conduct intact—is not 'retroactive' in the sense *Landgraf* uses that term . . . .").

The same conclusion follows if we look beyond the categorical approach and seek to determine whether there is any significant "degree of connection between the operation of the new rule and a relevant past event," as that language is used in *Landgraf. See also id.* at —— n. 29, 114 S.Ct. at 1502 n. 29 ("[W]e do not restrict the presumption against statutory retroactivity to cases involving 'vested rights' . . . . Nor do we suggest that concerns about retroactivity have no application to procedural rules."). Assuming the relevant past event is the commission of the original crime, there is no connection, in the *Landgraf* sense, between

the certificate of appealability changes and the original crime. No § 2254 applicant or § 2255 movant could credibly argue that he would not have committed the crime if he had known it was going to be more difficult to appeal any denial of collateral relief after he was convicted and his conviction was affirmed on direct appeal. *See Drinkard*, 97 F.3d at 766 ("[Applicant] obviously cannot argue that he relied on the existence of federal *de novo* review of claims adjudicated on the merits in state court proceedings the night he killed his three victims.").

Assuming that the relevant past event is some point in the trial or in a prior proceeding attacking the judgment, the requisite connection is still missing. No § 2254 applicant or § 2255 movant could persuasively argue that during his trial or prior attacks on the judgment, he relied to his detriment upon the pre-amendment versions of § 2253 and Rule 22(b). Release from a conviction or sentence is better sooner rather than later, and acquittal at trial is better yet. It is unlikely that any applicant or movant would pull any punches at trial or in early attacks on the judgment based upon expectations about the prospects of success in later proceedings. *See Lindh*, 96 F.3d at 866–67.

For these reasons, we hold that the AEDPA's certificate of appealability provisions, §§ 102 and 103 of the Act, apply to pending § 2254 cases, such as Bailey's, where no application for a certificate of probable cause to appeal was filed before the effective date of the Act, and to pending § 2255 cases, such as Hunter's, where no notice of appeal was filed before that effective date.[6]

## III. THE AUTHORITY OF DISTRICT JUDGES TO ISSUE CERTIFICATES OF APPEALABILITY

We turn now to the issue which prompted us to grant hearing en banc:

---

6. We do not mean to imply that all of the AEDPA amendments to the collateral review statutes and rules may be applied to pending cases. Section 101 of the AEDPA amends 28 U.S.C. § 2244(d) to require that any 28 U.S.C. § 2254 application be filed within one year of the completion of the state court direct review process, subject to tolling for the period when a properly filed state collateral review proceeding is pending. The Second Circuit has held that application of that provision to bar a § 2254 application filed before

the AEDPA's effective date "would be entirely unfair and a severe instance of retroactivity." *Reyes v. Keane*, 90 F.3d 676, 679 (2nd Cir.1996); *accord Lindh*, 96 F.3d at 865–66. As the Supreme Court instructed us in *Landgraf*, "courts should evaluate *each provision* of the Act in light of ordinary judicial principles concerning the application of new rules to pending cases and pre-enactment conduct." —— U.S. at ——, 114 S.Ct. at 1505 (emphasis added).

whether 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b), as amended by §§ 102 and 103 of the AEDPA, authorize district court judges to issue certificates of appealability, or instead vest that authority exclusively in circuit judges and justices.

## A. The Positions of the Parties

In the *Bailey* case, which involves 28 U.S.C. § 2254 relief and state inmates, the parties have squared off in opposition over the question, with the State of Alabama vigorously contesting Bailey's position that district judges can issue certificates of appealability. However, in the *Hunter* case, which involves 28 U.S.C. § 2255 relief and federal inmates, the United States has conceded that district judges can issue certificates of appealability in § 2255 motion proceedings. We do not rest our decision in even the *Hunter* case on the government's concession. There are two reasons we are unwilling to do so.

First, the issue of whether a district judge can certify appeals in § 2255 cases is materially identical to the issue of whether district judges can do so in § 2254 cases. See n. 8, *infra.* If we were to decide the § 2255 issue based upon the government's concession in the *Hunter* case, that would needlessly impede the State of Alabama's ability to have its arguments decided on the merits in the *Bailey* case.

Second, past experience has taught us that on occasion the government's position on criminal law issues is fluid. *See, e.g., United States v. Oboh,* 92 F.3d 1082, 1084 (11th Cir.1996). When we questioned the Department of Justice attorney at oral argument, he was unable to say that the concession he and the United States Attorney had made to us in the *Hunter* case was authorized by the Attorney General or the Solicitor General. In fact, he warned us that he could not bind the Solicitor General, who had not yet taken a position on the issue. Although the Department of Justice attorney did describe the concession as reflecting "the position of the United States nationwide," he also cautioned that the government reserved the right to change its mind at any time.

For these reasons, we prefer to decide the certificate of appealability issues in both of these cases based upon our evaluation of the merits rather than rely upon the government's concession in the *Hunter* case.

## B. The Language of the Provisions as Amended

We begin where courts interpreting statutory and rule provisions should, with the language of the provisions. Section 102 of the AEDPA amended § 2253, so that it now reads in pertinent part:

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). The crucial phrase is "circuit justice or judge." Unfortunately, that phrase is ambiguous, because the adjective "circuit" can be read in either of two ways. On the one hand, "circuit" can be read to modify both "justice" and "judge"; if that is what Congress meant, district court judges are not authorized to issue certificates of appealability, because a district judge is neither a "circuit justice" nor a "circuit judge." On the other hand, "circuit" can be read to modify only "justice" and not "judge"; if that is what Congress meant, district court judges are authorized to issue certificates of appealability, because a district judge is a "judge."

The plain language of the statutory provision being interpreted is usually the best indication of legislative intent, but here the language is not plain. It is ambiguous. If all we had to consider was the language of

§ 2253(c), as amended, we might be hard put to choose between the two plausible interpretations of the "circuit justice or judge" language. But, there is more.

The same subject is also addressed in § 103 of the AEDPA, which amended Rule 22(b). As amended by § 103, Rule 22(b) now provides:

> **(b) Certificate of appealability.** In a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court, an appeal by the applicant for the writ may not proceed unless a district or a circuit judge issues a certificate of appealability pursuant to section 2253(c) of title 28, United States Code. If an appeal is taken by the applicant, the district judge who rendered the judgment shall either issue a certificate of appealability or state the reasons why such a certificate should not issue. The certificate or the statement shall be forwarded to the court of appeals with the notice of appeal and the file of the proceedings in the district court. If the district judge has denied the certificate, the applicant for the writ may then request issuance of the certificate by a circuit judge. If such a request is addressed to the court of appeals, it shall be deemed addressed to the judges thereof and shall be considered by a circuit judge or judges as the court deems appropriate. If no express request for a certificate is filed, the notice of appeal shall be deemed to constitute a request addressed to the judges of the court of appeals. If an appeal is taken by a State or its representative, a certificate of appealability is not required.

Fed.R.Civ.P. 22(b). Plainly, the language of that provision authorizes district judges to issue certificates of appealability in § 2254 cases.

The State of Alabama[7] attempts to escape the force of the plain language of Rule 22(b) by focusing on the "pursuant to § 2253(c)" cross reference at the end of the first sentence of the rule. The State argues that when the rule says that "a district or a circuit judge issues a certificate of appealability pursuant to section 2253(c)," what it means is that a district judge cannot, because that is what § 2253(c) really means. Those four words, "pursuant to section 2253(c)," at the end of one of Rule 22(b)'s seven sentences will not bear the weight the State would have us put on them. We do not believe that Congress intended the cross reference to § 2253(c) to operate like a virus eating away the plain meaning of much of the language in the remainder of the rule, such as the very next sentence which says: "If an appeal is taken by the applicant, the district judge who rendered the judgment shall either issue a certificate of appealability or state the reasons why such a certificate should not issue." Instead, we think that when Congress said in Rule 22(b) that issuance of certificates of appealability should be "pursuant to" § 2253(c), it was referring to the standard for issuing such certificates, which is prescribed in § 2253(c)(2), and to the requirement that the particular issues meeting that standard be specified, which is contained in § 2253(c)(3).

As far as Rule 22(b) is concerned, there is only one plausible interpretation of its language relating to the present issue. Not only does the rule make it clear that a district judge is authorized to issue a certificate of appealability, the plain language of the rule requires the judge whose denial of relief is subject to the attempted appeal either to issue a certificate, or to state why one should be denied. Only if the district judge who rendered the judgment has declined to issue the certificate does a circuit judge come into the picture. Under the plain language of the rule, an applicant for the writ gets two bites at the appeal certificate apple: one before the district judge, and if that one is unsuccessful, he gets a second one before a circuit judge.[8]

---

7. As we did with Hunter and Bailey, *see supra* n. 2, for the sake of simplicity, we will attribute to the State of Alabama not only its own arguments, but also the arguments on the same issues made in the amici curiae briefs filed by the States of Florida and Georgia.

8. Rule 22(b) addresses only "habeas proceeding[s] in which the detention complained of arises out of process issued by a state court"; it says nothing about § 2255 federal prisoner proceedings. As a result, at least one court has concluded that although district courts have the

To sum up what we have on the face of the provisions, § 102 of the AEDPA amended 28 U.S.C. § 2253 so that it now contains language ("circuit justice or judge") that is ambiguous insofar as the issue at hand is concerned. Yet, in the very next section of the AEDPA Congress focused on Rule 22(b), modified it somewhat, and left the plain language of that rule susceptible to but one meaning insofar as the same issue is concerned.

We have a choice. On the one hand, we could interpret the ambiguous phrase "circuit justice or judge" in § 2253(c) to mean "circuit justice or circuit judge," which will conflict with and render meaningless much of the plain language of Rule 22(b). Indeed, at least some of the language in each of the first four sentences of the rule would be negated by such an interpretation of § 2253(c). On the other hand, we could interpret the ambiguous phrase in § 2253(c) to mean a "circuit justice" or a "judge," which would include district judges as well as circuit judges. That interpretation would reconcile the statutory provision with the rule and give effect to each word of both provisions. The right

choice seems clear, at least insofar as common sense is concerned.

■ In this instance, decisional law is consistent with the dictates of common sense. No canon of statutory construction is an infallible guide, but one of the most reliable is that the text of each provision of an act or statute should be read in a way that gives effect to all of its provisions. *See, e.g., United States v. Nordic Village, Inc.,* 503 U.S. 30, 35–36, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *Mountain States Telephone and Telegraph Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985). If we were to construe the phrase "circuit justice or judge" in § 2253(c), as amended by § 102 of the AEDPA, to exclude district judges, we would violate the Supreme Court's admonition that we not construe legislative enactments "so as to render superfluous other provisions in the same enactment," *Freytag v. C.I.R.,* 501 U.S. 868, 877, 111 S.Ct. 2631, 2638, 115 L.Ed.2d 764 (1991), such as Rule 22(b), as amended by § 103 of the AEDPA.[9]

As strongly as the reconciliation canon pushes us towards a decision, however, we do

authority to issue certificates of appealability in § 2254 proceedings, they lack that authority in § 2255 proceedings. *United States v. Cota–Loaiza,* 936 F.Supp. 756, 760–61 (D.Colo.1996).

We disagree with the proposition that § 2253(c)'s "circuit justice or judge" language means one thing for § 2254 proceedings but something different for § 2255 proceedings. It is a basic rule of statutory construction that "identical words [even when] used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop,* 496 U.S. 478, 484, 110 S.Ct. 2499, 2504, 110 L.Ed.2d 438 (1990) (citations and internal quotation marks omitted); *accord, e.g., C.I.R. v. Lundy,* — U.S. —, —, 116 S.Ct. 647, 655, 133 L.Ed.2d 611 (1996) ("The interrelationship and close proximity of these provisions of the statute presents a classic case for application of the normal rule of statutory construction that identical words used in different parts of the same act are intended to have the same meaning.") (citations and internal quotation marks omitted); *In re St. Laurent,* 991 F.2d 672, 680 (11th Cir.1993) ("It is a basic canon of statutory construction that identical terms within an Act bear the same meaning"). It follows with even more force that a term used once within a single statutory provision should not be given two different meanings. Moreover, as our subsequent discussion of the legislative history of § 2253 will make clear, there is no

indication at all that Congress intended to distinguish between § 2254 and § 2255 proceedings relating to this issue; every indication is to the contrary.

9. In the alternative to its argument that district court judges are not authorized to issue certificates of appealability, the State of Alabama contends that before any appeal can proceed, two certificates of appealability are required, one from the district judge and another from a court of appeals judge. One district court has speculated, without much enthusiasm, that Congress contemplated such a scheme. *See Houchin v. Zavaras,* 924 F.Supp. 115, 117 (D.Colo.1996) ("Perhaps, two certificates are contemplated. In view of the apparent contradiction, however, it is unlikely that contemplation played any role at all.")

We reject the State's alternative argument about two certificates, however, because it is inconsistent with the plain language of § 2253(c)(1) ("[U]nless a circuit justice or judge issues a certificate of appealability"), and with the plain language of Rule 22(b) as amended ("[A]n appeal by the applicant for the writ may not proceed unless a district or a circuit judge issues a certificate of appealability.... If the district judge has denied the certificate, the applicant for the writ may then request issuance of the certificate by a circuit judge.").

not end our inquiry with it. Before concluding this matter, we will address the State of Alabama's contention that the legislative history of the AEDPA amendments to § 2253 and Rule 22(b) supports the State's interpretation of those provisions.

### C. The Legislative History of the Amendments

The history of the effort to amend the appeal certificate provisions of § 2253 and Rule 22(b) extends back a quarter of a century. Over the years Congress repeatedly considered proposals to remove from district judges the authority to issue certificates permitting collateral review appeals. While those proposals enjoyed considerable support, there was also opposition to them, and Congress ultimately chose to leave district judges with the authority to issue such certificates.

### 1. Judge Friendly's Proposal

The story begins, oddly enough, in a footnote of a law review article. The genesis was not in just any law review article; it was in Judge Henry J. Friendly's famous, and famously influential, article *Is Innocence Irrelevant?: Collateral Attack on Criminal Judgments*, 38 U. Chi. L.Rev. 142 (1970). That article sounded a clarion call for collateral review reform which would echo in Supreme Court decisions for years to come. *See, e.g., Schlup v. Delo*, —— U.S. ——, —— & n. 46, 115 S.Ct. 851, 867 & n. 46, 130 L.Ed.2d 808 (1995); *Teague v. Lane*, 489 U.S. 288, 309, 109 S.Ct. 1060, 1074–75, 103 L.Ed.2d 334 (1989); *Kuhlmann v. Wilson*, 477 U.S. 436, 453–54 & nn. 16–17, 106 S.Ct. 2616, 2626–27 & nn. 16–17, 91 L.Ed.2d 364 (1986); *Smith v. Murray*, 477 U.S. 527, 539, 106 S.Ct. 2661, 2668–69, 91 L.Ed.2d 434 (1986). The article's "chief concern is about the basic principle of collateral attack," and its "thesis is that, with a few important exceptions, convictions should be subject to collateral attack only when the prisoner supplements his constitutional plea with a colorable claim of innocence." 38 U. Chi. L.Rev. at 142, 146. However, the article also addresses some specific procedural matters, including the requirement of a certificate of proba-

ble cause to appeal the denial of collateral relief.

When Judge Friendly wrote the article in 1970 (and up until the AEDPA went into effect twenty-six years later), § 2253 provided, in pertinent part:

> An appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a State court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause.

28 U.S.C. § 2253. That part of § 2253 had remained unchanged since it was enacted in 1948. The complementary rule provision was Federal Rule of Appellate Procedure 22(b), which provided (as it would for the next twenty-six years):

> **(b) Necessity of Certificate of Probable Cause for Appeal.** In a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court, an appeal by the applicant for the writ may not proceed unless a district or a circuit judge issues a certificate of probable cause. If an appeal is taken by the applicant, the district judge who rendered the judgment shall either issue a certificate of probable cause or state the reasons why such a certificate should not issue. The certificate or the statement shall be forwarded to the court of appeals with the notice of appeal and the file of the proceedings in the district court. If the district judge has denied the certificate, the applicant for the writ may then request issuance of the certificate by a circuit judge. If such a request is addressed to the court of appeals, it shall be deemed addressed to the judges thereof and shall be considered by a circuit judge or judges as the court deems appropriate. If no express request for a certificate is filed, the notice of appeal shall be deemed to constitute a request addressed to the judges of the court of appeals. If an appeal is taken by a state or its representa-

tive; a certificate of probable cause is not required.

Fed. R.App. P. 22(b) (1995).

Thus, the statutory and rule provisions required a certificate of probable cause to appeal as a prerequisite to any appeal by a state inmate from the denial of § 2254 relief. Judge Friendly had no problem with that requirement. In fact, he thought the certificate prerequisite was such a good idea that he proposed it be extended to federal inmate appeals from the denial of § 2255 relief, *see* 38 U. Chi. L.Rev. at 144 n. 9, as it finally would be by the AEDPA amendments to § 2253.

What Judge Friendly found fault with was permitting district court judges to issue the required certificates, thereby forcing courts of appeals to hear and decide appeals that they themselves might never have authorized. *See* 38 U. Chi. L.Rev. at 144 n. 9 (referring to "cases where the district court has issued a certificate, and under *Nowakowski v. Maroney,* 586 [386] U.S. 542 [87 S.Ct. 1197, 18 L.Ed.2d 282] (1967), the court of appeals has been obliged to hear the appeal although it believed the certificate was improvidently granted."). He thought that permitting district judges to force court of appeals judges to hear appeals from the denial of collateral review was inefficient, wasted judicial resources, and contributed to the increasing number of habeas appeals. 38 U. Chi. L.Rev. at 144 n. 9. For those reasons, Judge Friendly proposed that:

> Congress should move promptly to amend 28 U.S.C. § 2253 (1964) so as to place the authority to issue certificates of probable cause solely in the courts of appeals and require similar authorization for appeals by federal prisoners in cases under 28

U.S.C. § 2255 (1964) and Fed.R.Crim.P. 35.

*Id.*

## 2. The Friendly Approach in Congress

The Friendly approach to certificates of probable cause to appeal made its first appearance in Congress in 1972. *See* S. 3833, 92d Cong., 2d Sess. (1972). At the suggestion of the Department of Justice, Senator Hruska included in his habeas corpus reform legislation a provision that would have amended the pertinent part of 28 U.S.C. § 2253 to provide:

> An appeal may be taken to the court of appeals from the final order in a habeas corpus proceeding or a proceeding under section 2255 of this title *only if the court of appeals* issues a certificate of probable cause: Provided, however, That the certificate need not issue in order for a State or the Federal Government to appeal the final order.

S. 3833, 92d Cong., 2d Sess. (1972) (emphasis changed).[10] That legislative proposal did not attempt to amend Rule 22(b). Bills containing the identical language were introduced the next year, as well. *See* S. 567, 93d Cong., 1st Sess. (1973); H.R. 7580, 93d Cong., 1st Sess. (1973).

Except for bills introduced in the early 1970's, there were apparently no significant legislative developments relating to this specific issue until 1982. In that year, Senator Thurmond introduced a bill that, among other things, would have amended the third paragraph of 28 U.S.C. § 2253, to provide:

> An appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention

---

**10.** Other collateral review reform bills were introduced in Congress prior to S. 3833, namely House Bill 13722 and House Bill 11441, but those bills did not contain any amendment to 28 U.S.C. § 2253 or Rule 22(b). *See* H.R. 11441, 92d Cong., 1st Sess. (1971); H.R. 13722, 92d Cong., 2d Sess. (1972).

Attorney General Richard G. Kleindienst wrote a letter to the Chairman of the House Committee on the Judiciary suggesting a number of changes in those House bills. *See* 118 Cong. Rec. 24,937–41 (1972) (reprinting June 21, 1972 letter from Kleindienst to Emanuel Celler, Chairman, House

Committee on the Judiciary). Some of the changes Kleindienst recommended concerned certificates of probable cause to appeal. Citing Judge Friendly's article, Kleindienst suggested: extending the certificate requirement to federal prisoner appeals in § 2255 cases, clarifying that the certificate requirement did not apply to state and federal government parties, and limiting the authority to issue such certificates to the courts of appeal. Senator Hruska incorporated Kleindienst's recommendations into S. 3833 and reprinted the Kleindienst letter as an explanation for the bill. *See* 118 Cong. Rec. at 24,937–41.

complained of arises out of process issued by a state court, or from the final order in a proceeding under section 2255 of this title, *unless a circuit justice or judge* issues a certificate of probable cause.

S. 2216, 97th Cong., 2d Sess. § 3 (1982) (emphasis added). Senator Thurmond's bill, unlike the bill Senator Hruska had introduced in 1972, would also have amended Rule 22(b) to state:

> **(b) Necessity of Certificate of Probable Cause for Appeal.** In a habeas corpus proceeding in which the detention complained of arises out of process issued by a state court, and in a motion proceeding pursuant to 28 U.S.C. § 2255, an appeal by the applicant or movant may not proceed *unless a circuit judge issues a certificate of probable cause.* If a request for a certificate of probable cause is addressed to the court of appeals, it shall be deemed addressed to the judges thereof and shall be considered by a circuit judge or judges as the court deems appropriate. If no express request for a certificate is filed, the notice of appeal shall be deemed to constitute a request addressed to the judges of the court of appeals. If an appeal is taken by a state or the government or its representative, a certificate of probable cause is not required.

S. 2216, 97th Cong., 2d Sess. § 4 (1982) (emphasis added).

Materially identical language amending both § 2253 and Rule 22(b) was included in numerous collateral review bills considered by Congress during the next dozen years.[11] There was never any doubt that the purpose of that language was, and its effect clearly would be, to implement the Friendly approach, removing from district judges the authority to issue certificates of probable cause to appeal. *See, e.g., The Habeas Corpus Reform Act of 1982: Hearing on S. 2216 Before the Senate Comm. On the Judiciary,* 97th Cong., 2d Sess. 20 (1982) (statement of Jonathan C. Rose, Assistant Attorney General, Office of Legal Policy, U.S. Department of Justice); *id.* at 47 (letter of Attorney General William French Smith to Vice President Bush, introduced through Jonathan Rose); *id.* at 82–85 (section-by-section analysis of the bill by Jonathan Rose); 128 Cong. Rec. 21,162 (1982) (statement of Senator Thurmond); S.Rep. No. 226, 98th Cong., 1st Sess. 18 (1983); *Habeas Corpus Reform: Hearing on S. 238 Before the Senate Comm. on the Judiciary,* 99th Cong., 1st Sess. 35 (1985) (statement of Stephen S. Trott, Assistant Attorney General, Criminal Division); 133 Cong. Rec. 36,221 (1987) (statement of Senator Thurmond accompanying introduction of S.1970, 100th Cong., 1st Sess. (1987)).

The sheer number of bills introduced during this period that would have implemented the Friendly approach, *see supra,* n. 11, evidences the persistent support that approach enjoyed. One of its principal supporters was the Department of Justice. In 1988, a Jus-

11. All of those bills used the phrase "circuit justice or judge" in proposed amendments to § 2253 and the phrase "circuit judge" in proposed amendments to Rule 22(b). *See* H.R. 6050, 97th Cong., 2d Sess. §§ 3–4 (1982); S. 2838, 97th Cong., 2d Sess. §§ 3–4 (1982); S. 217, 98th Cong., 1st Sess. §§ 3–4 (1983); H.R. 2238, 98th Cong., 1st Sess. §§ 3–4 (1983); S. 1763, 98th Cong., 1st Sess. §§ 3–4 (1983); S. 238, 99th Cong., 1st Sess. §§ 3–4 (1985); S. 2301, 99th Cong., 2d Sess. §§ 3–4 (1986); H.R. 73, 100th Cong., 1st Sess. §§ 3–4 (1987); S. 260, 100th Cong., 1st Sess. §§ 3–4 (1987); S. 1285, 100th Cong., 1st Sess. §§ 3–4 (1987); S.1970, 100th Cong., 1st Sess. §§ 203–204 (1987); S. 88, 101st Cong., 1st Sess. §§ 3–4 (1989); S. 271, 101st Cong., 1st Sess. §§ 3–4 (1989); S. 1225, 101st Cong., 1st Sess. §§ 603–604 (1989); H.R. 1090, 101st Cong., 1st Sess. §§ 3–4 (1989); H.R. 2709, 101st Cong., 1st Sess. §§ 603–604 (1989); H.R. 3119, 101st Cong., 1st Sess. §§ 402–403 (1989); H.R. 3918, 101st Cong., 2d Sess. §§ 203–204 (1990); H.R. 4079, 101st Cong., 2d Sess. § 152 (1990); S. 1241, 102d Cong., 1st Sess. §§ 1103–1104 (1991); S. 1335, 102d Cong., 1st Sess. § 902 (1991); S. 2305, 102d Cong., 2d Sess. §§ 203–204 (1992); S. 8, 103d Cong., 1st Sess. §§ 203–204 (1993); S. 38, 103d Cong., 1st Sess. §§ 3–4 (1993); S. 1356, 103d Cong., 1st Sess. §§ 703–704 (1993); H.R. 2217, 103d Cong., 1st Sess. §§ 203–204 (1993); H.R. 2321, 103d Cong., 1st Sess. §§ 203–204 (1993); H.R. 2847, 103d Cong., 1st Sess. §§ 203–204 (1993); H.R. 2872, 103d Cong., 1st Sess. §§ 802–803 (1993); H.R. 4055, 103d Cong., 2d Sess. §§ 802–803 (1994); H.R. 4079, 103d Cong., 2d Sess. §§ 102–103 (1994); H.R. 4197, 103d Cong., 2d Sess. §§ 802–803 (1994); H.R. 4848, 103d Cong., 2d Sess. §§ 302–303 (1994); H.R. 5008, 103d Cong., 2d Sess. §§ 402–403 (1994); H.R. 5134, 103d Cong., 2d Sess. §§ 103–104 (1994).

tice Department official told a House committee that:

A fifth reform proposed in the legislation would vest the authority to issue certificates of probable cause for appeal in habeas corpus proceedings exclusively in the judges of the courts of appeals. This would correct inefficient and wasteful features of current procedure under which a petitioner is given repetitive opportunities to. attempt to persuade first a district judge and then a circuit judge to authorize ·an appeal, and under which a court of appeals is required to hear an appeal on a district judge's certification, though it believes that the certificate was improvidently granted.

*Hearing Before a Subcomm. of the House Comm. on Government Operations,* 100th Cong., 2d Sess. 43 (1988) (statement of Paul Cassell, Associate Deputy Attorney General, regarding S.1970).

However, the Friendly approach did not meet with unanimous approval. In 1982, Professor Stephen Gillers of New York University School of Law urged the Senate Judiciary Committee to reject it:

[L]et me say something about the proposal that only a circuit judge be empowered to issue a certificate of probable cause. Now, either the district judge who denied the petition or a circuit judge may issue one. The reason for the current rule is plain. The district judge is most familiar with the merits of the case and therefore is in the best position to say whether an appeal is in order. The circuit judge to ·whom the petition for a certificate of probable cause comes must first familiarize himself with the case before deciding whether to issue such a certificate. In other words, much of the work the judge may ultimately have to do on the merits will have to be done in deciding whether a certificate should issue. This argument might lead to the conclusion that only district judges, already familiar with the case, be authorized to issue such certificates. The problem with that, however, is that it gives the district judge the power to block review of his own decision simply by denying a certificate. I recognize Judge Friendly's earlier criticism, but I have not been persuaded by it. Nor have I seen data which would suggest that the current regime has resulted in abuses.

*The Habeas Reform Act of 1982: Hearing on S. 2216,* 97th Cong., 2d Sess. 146.

Professor Gillers was not the only one who was unfriendly to the Friendly approach. A representative of the National Legal Aid and Defender Association, the Legal Aid Society of New York City, and the Federal Defenders also submitted a statement at the same hearing, in which she described the benefits of allowing district judges to retain the authority they had to issue certificates of probable cause:

Current district court certification process provides an opportunity for the district court to advise the court of appeals that while it believes the decision denying the writ to be correct, the case presents an important issue for review. The process takes little time, because the judge is aware of the claims involved and can decide whether to grant the certificate with no additional effort. On the other hand, an application for a certificate to the court of appeals generally requires an extended motion and memorandum of law. Usually, because there is no counsel appointed at the district court level, the motion is submitted *pro se* and a consideration by the court of appeals of the motion requires extended examination of the case. If a certificate is granted, the court reviews the case two times.

*Id.* at 209–210 (statement of Phylis Bamberger).

Three years later, when the Senate Judiciary Committee was again considering a bill that included the Friendly approach, that same witness spoke on behalf of the American Bar Association, against changing the law. *Habeas Corpus Reform: Hearing on S. 238,* at 109 (statement of Phylis Bamberger). She argued that instead of saving time and resources, the Friendly approach would actually waste them, because appeals court judges. would ·lack the familiarity with the case of the district judge who had handled it. *Id.*

Larry Yackle, Professor of Law at Boston University, speaking to the same Senate Committee on behalf of the American Civil Liberties Union, also opposed the Friendly approach. *Id.* at 133. He argued that, although a district judge's denial of a certificate to appeal should be reviewed by the court of appeals, "[i]f any judge can make a reliable determination regarding the arguable merit of an appeal, it is ... the judge who considered the claim at the trial level." *Id.* The ACLU's position was that "district judges are in an excellent position to identify arguable claims," and "we see nothing to be gained and much to be lost by denying to district judges the authority to make determinations in any case." *Id.*

### 3. The Issue Resolved

The long-debated issue of whether district judges should continue to have the authority to issue appeal certificates was finally resolved by the 104th Congress. That Congress had before it bills containing provisions which clearly would have implemented the Friendly approach. Like similar bills from the 1980's, those 1995 bills would have not merely inserted the ambiguous "circuit justice or judge" language into § 2253, they also would have amended Rule 22(b) to provide that "an appeal by the applicant or movant may not proceed unless a circuit judge issues a certificate of probable cause." *See, e.g.*, H.R. 3, 104th Cong., 1st Sess. §§ 102–103 (1995); H.R. 729, 104th Cong., 1st Sess. §§ 102–103 (1995); H.R. 920, 104th Cong., 1st Sess. §§ 502–503 (1995); H.R. 2992, 104th Cong., 2d Sess. §§ 502–503 (1996).[12] It was the language amending Rule 22(b) that left no doubt district judges would be precluded from issuing appeal certificates, if any of these bills were enacted.

However, Congress also had before it several bills that did not incorporate Judge Friendly's proposal, and it was one of those bills that Congress ultimately chose to enact. The first bill in the 104th Congress that deviated from the Friendly approach was Senate Bill 623, sponsored by Senator Spec-

ter. That bill differed from its predecessors in several ways that are relevant to our discussion. It was the first bill to replace the term "certificate of probable cause" with "certificate of appealability," a change reflected in both the proposed amendment to § 2253 and the proposed amendment to Rule 22(b). S. 623, 104th Cong., 1st Sess. §§ 3–4 (1995).

Like many other bills, S. 623 would have amended § 2253 to provide that a "circuit justice or judge" could issue a certificate of appealability. *Id.* § 3. What was different about the relevant part of S. 623 is what it proposed to do with Rule 22(b). It would have inserted the new "certificate of appealability" terminology and a "pursuant to section 2253(c)" cross-reference into Rule 22(b), but those changes were relatively minor. *Id.* § 4. The important difference between S. 623 and competing bills is that S. 623 would *not* have rewritten Rule 22(b) to provide that only court of appeals judges could issue the necessary certificates. Instead, this bill would have left intact the language of Rule 22(b) that expressly permitted either "a district judge or a circuit judge" to issue the certificates, and that required a district judge who denied relief to "either issue a certificate of appealability or state the reasons why such a certificate should not issue." *Id.* § 4. Thus, S. 623 reflected an understanding that the phrase "circuit justice or judge" in § 2253(c) could embrace "a district or a circuit judge" as that language is used in Rule 22(b).

Hearings on S. 623, which was entitled the "Habeas Corpus Reform Act of 1995," and related crime bills were held before the Senate Judiciary Committee. California Attorney General Daniel Lungren submitted a statement addressing several issues related to collateral review reform, and in that statement mentioned that the House had passed H.R. 729. *Concerning Habeas Corpus Reform: Hearings on H.R. 729, S. 623, and S. 3 Before the Comm. of the Judiciary, United States Senate*, 141st Cong., 1st Sess. (1995)

---

**12.** Senate Bill 3 took a somewhat different approach toward the same end. It would have amended Rule 22(b) to provide that an appeal could not proceed unless "the Court of Appeals"

(not just a circuit judge) issues a certificate of probable cause to appeal. *See* S. 3, 104th Cong., 1st Sess. § 508 (1995).

(statement of Daniel Lungren, Attorney General, California). House Bill 729 would have implemented the Friendly approach to appeal certificates. Although Lungren supported many of the provisions in H.R. 729, he recommended that Congress continue to allow district judges to issue certificates of probable cause:

> Congress adopted the certificate of probable cause requirement in 1908 to curb the practice of frivolous habeas appeals for delay purposes. The United States Supreme Court in Barefoot v. Estelle has also noted that a certificate of probable cause requires a proper showing. Specifically, the certificate should not issue unless the petitioner makes "a substantial showing of the denial of [a] federal right." I strongly support language in the Habeas Corpus Reform Act which provides that the granting of a certificate of probable cause is to be done on an issue by issue basis.
>
> Finally, the U.S. Supreme Court has noted that "it is established law that a circuit judge or justice entertaining an application for a certificate should give weighty consideration to its prior denial by a district judge." *In this regard, I would recommend preserving existing law with respect to the ability of a federal district court judge or a circuit court judge to issue certificates of probable cause.*

*Id.* (emphasis added; footnotes to citations deleted). Lungren's position on the issue is noteworthy for two reasons: he was the Attorney General of California and one of the most active proponents of change in the law governing collateral review; and, while he had been a member of Congress, Lungren had introduced proposed legislation that incorporated the Friendly approach. *See* H.R. 6050, 97th Cong., 2d Sess. §§ 3–4 (1982); H.R. 2238, 98th Cong., 1st Sess. §§ 3–4 (1983). In spite of his previous support of the Friendly approach, by 1995 Lungren had come to believe that district judges should retain the authority to issue certificates of probable cause, and he expressed that opinion to the Senate Judiciary Committee. *Concerning Habeas Corpus Reform* (statement of Daniel Lungren).

At least five bills in the 104th Congress in addition to S. 623 used the "circuit justice or judge" language in proposed amendments to 28 U.S.C. § 2253, while at the same time leaving intact the language in Rule 22(b) that clearly provided district judges with authority to issue certificates of appealability. *See* S. 735, 104th Cong., 1st Sess. §§ 702–703 (1995); S. 816, 104th Cong., 1st Sess. §§ 902–903 (1995); H.R. 2586, 104th Cong., 1st Sess. §§ 102–103 (1995); H.R. 2703, 104th Cong., 1st Sess., §§ 902–903 (1995); H.R. 2768, 104th Cong., 1st Sess. §§ 902–903 (1995).

The most important of those other bills was Senator Dole's Senate Bill 735, because it would ultimately be enacted into law. That bill would amend the third paragraph of § 2253 to provide:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
>> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>>
>> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

S. 735 § 702.[13] Senate Bill 735 would also retain in an amended Rule 22(b) the language providing that either a "district or a circuit judge" could issue the certificate, and requiring a district judge who denied relief to either issue a certificate or explain why. *Id.* § 703.

---

**13.** The amendments reflected in § 2253(c)(2) and (3), which do not directly relate to the issue before us, had been included in a number of other bills considered by the 104th Congress, including S. 623. *See,* S. 623, 104th Cong., 1st Sess. § 3 (1995); *see also, e.g.,* S. 3, 104th Cong., 1st Sess. § 508 (1995).

The Senate passed S. 735. The House did too, but only after substituting the text of H.R. 2703 in toto. That substitution is not material for our purposes, because H.R. 2703 contained provisions relating to certificates of appealability that were identical in all respects to those in S. 735. *Compare* S. 735 §§ 702–703 *with* H.R. 2703 §§ 902–903. Some of the other provisions in the two bills were different, however, so there was a Conference Committee. The Conference Committee Report resolved the other differences between the House and Senate.[14] The Conference Committee's recommendations were agreed to by each body, and the AEDPA was signed into law on April 24, 1996. As enacted and signed into law, the legislation contained the amendments to § 2253 and Rule 22(b) exactly as they had been in proposed in S. 623 and S. 735. *See* AEDPA §§ 102–103.

### 4. What the Legislative History Means

Our review of the legislative history shows that Congress considered, off and on for a quarter of a century, the question of whether district judges should retain the authority to issue certificates allowing appeals from the denial of collateral review. The Friendly approach, which would have changed the law to divest district judges of that authority, drew opposition as well as support over the years.

The 104th Congress, which finally resolved the matter, was presented with a choice. Virtually all of the bills that addressed the matter would have amended § 2253 to include the "circuit justice or judge" language. That was not the choice. The choice was what to do with Rule 22(b). What Congress chose to do about that rule would give meaning to the "circuit justice or judge" language in § 2253. One group of bills unquestionably would have adopted the Friendly approach by amending Rule 22(b) to expressly provide that only a circuit judge could issue the certificates necessary for an appeal. Another group of bills would have amended Rule

22(b) in minor ways, such as substituting "certificate of appealability" for "certificate of probable cause," but would have left intact the language of that rule which clearly authorizes district judges to issue such certificates. That language provides that "a district judge or a circuit judge" may issue the certificate, and imposes on a district judge who denies collateral relief the duty to "either issue a certificate of appealability or state the reasons why such a certificate should not issue." Congress made its choice, and that choice was to adopt the second option, not the Friendly approach.

The legislative history leading up to enactment of the AEDPA §§ 102–103 amendments to 28 U.S.C. § 2253 and to Federal Rule of Appellate Procedure 22(b) does not convince us that Congress intended to divest district judges of the authority to issue certificates of appealability. To the contrary, the legislative history of the amendments indicates otherwise. It certainly does not override the force of the decisional law requiring that we give all the language of both § 2253(c) and Rule 22(b), as amended, effect. *See supra* p. 1576.

## IV. CONCLUSION

We hold that the 28 U.S.C. § 2253(c) and Federal Rule of Appellate Procedure 22(b) amendments, made by §§ 102–103 of the Antiterrorism and Effective Death Penalty Act of 1996, apply to 28 U.S.C. § 2254 proceedings in which no certificate of probable cause to appeal was obtained before the April 24, 1996 effective date of the Act. We also hold that those amendments apply to 28 U.S.C. § 2255 proceedings in which no notice of appeal was filed before that effective date.

We further hold that under 28 U.S.C. § 2253(c), as amended, and Federal Rule of Appellate Procedure 22(b), as amended, district court judges are authorized to issue certificates of appealability.

---

14. Under the heading "Title I—Habeas Corpus Reform," the Conference Committee Report discusses the purpose and the effect of the Act's provisions relating to collateral review proceedings. *See* H.R. Conf. Rep. No. 518, 104th Cong., 2d Sess. 111 (1996). The certificate of appealability provisions are not mentioned in the report.

In *Hunter v. United States,* No. 96–6513, we order that the appeal may proceed.

In *Bailey v. Nagle,* No. 96–6770, we remand the case to the district court for compliance with the requirement of 28 U.S.C. § 2253(c)(3) that the certificate of appealability indicate which specific issue or issues satisfies the § 2253(c)(2) standard. After such compliance, the appeal may proceed.

So ORDERED.