Cindy **GRANT–CHASE**, Petitioner,

v.

**COMMISSIONER, NEW HAMPSHIRE DEPARTMENT OF CORRECTIONS,** Respondent.

No. 97–1520.

United States Court of Appeals, First Circuit.

Heard April 6, 1998.

Decided June 5, 1998.

Albert E. Scherr for petitiioner.

John P. Kacavas, Assistant Attorney General for the State of New Hampshire, with whom Philip T. McLaughlin, Attorney General for the State of New Hampshire, was on brief, for respondent.

Leo T. Sorokin on brief for Federal Defender Office, amicus curiae.

David S. Kris on brief for United States Department of Justice, amicus curiae.

Before TORRUELLA, Chief Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Petitioner Cindy Grant–Chase appeals the denial of her application for a writ of habeas corpus under 28 U.S.C. § 2254. Her appeal presents two questions. First, is 1st Cir. R. 22.1(c) (Interim Local Rule) inconsistent with 28 U.S.C. § 2253(c)(1) and Fed. R.App. P. 22(b) (as these provisions were amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")) insofar as it requires appellants seeking collateral relief under 28 U.S.C. §§ 2254 or 2255 who already have obtained a certificate of appealability ("COA") from a district judge as to one or more issues also to obtain a COA on those issues from the court of appeals? Second, if the merits of this case are properly before us, did the district court err in concluding that the challenged state ruling was neither contrary to, nor involved an unreasonable application of, "clearly established Federal law, as determined by the Supreme Court of the United States"? 28 U.S.C. § 2254(d)(1).

We conclude that 1st Cir. R. 22.1(c) is inconsistent with 28 U.S.C. § 2253(c)(1) and Fed. R.App. P. 22(b) in requiring a second COA in the circumstances just described, but reject petitioner's appeal on the merits.

I.

We take the facts directly from *State v. Grant–Chase*, 140 N.H. 264, 665 A.2d 380 (1995), *cert. denied*, 517 U.S. 1140, 116 S.Ct. 1431, 134 L.Ed.2d 553 (1996).

On December 28, 1990, the [petitioner] and the victim, George Tegelaar, were in a physical struggle that resulted in the [petitioner] shooting and wounding the victim. Both the victim and the [petitioner] were transported to the hospital for treatment of their injuries. Because the [petitioner] was a suspect in the case, Officers Langley and Folini went to the hospital to question the [petitioner], hoping to elicit incriminating statements. The [petitioner] was under constant police watch and was not free to leave. Officer Langley was within three to five feet of her while she was in the emergency room. During that time the [petitioner] asked Officer Langley for her purse and if she could call her lawyer. Once the hospital staff had completed their testing, the [petitioner] telephoned her lawyer. During the five- to ten-minute telephone call Officer Langley remained present but could not overhear the substance of the conversation. After the [petitioner] ended her phone call, Officers Langley and Folini approached her to initiate questioning. Until this point the police had not subjected the [petitioner] to questioning or its functional equivalent. Officer Folini asked her if it was all right to ask some questions about the incident. The [petitioner] told him that she had talked to her attorney, who advised her to cooperate with the investigation. The officers explained to the [petitioner] her *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which she explicitly waived by signing a waiver form, and elicited incriminating statements.

*Id.* at 265–66, 665 A.2d 380.

Prior to trial, petitioner moved to suppress the statements she had given to Officers Langley and Folini, arguing that the statements had been obtained in violation of, *inter alia*, her right to have counsel present during custodial interrogation. *See Miranda*, 384 U.S. at 469–73, 86 S.Ct. 1602. The state trial court rejected her argument, ruling that petitioner did not "adequately indicate[ ] to the officers that she sought the assistance of counsel." *Grant–Chase*, 140 N.H. at 267, 665 A.2d 380 (summarizing the trial court's ruling). Thereafter, a jury convicted petitioner of first degree assault.

Petitioner appealed her conviction to the New Hampshire Supreme Court, contending that statements elicited in violation of, *inter alia*, the rules of *Miranda* were used to convict her. On December 14, 1994, the New Hampshire Supreme Court affirmed petitioner's conviction. Petitioner moved for and was granted reconsideration of this decision. But on October 3, 1995, the court handed down a new opinion that again affirmed petitioner's conviction.

Disagreeing with the trial court, the New Hampshire Supreme Court first ruled that petitioner's request to call her lawyer was "an invocation of the right to counsel." *Grant–Chase*, 140 N.H. at 267, 665 A.2d 380. The court then opined that, "[h]ad the [petitioner] made her request for counsel after *Miranda* warnings had been given or after interrogation had begun, there would have been an irrebuttable presumption that the [petitioner] asked for the assistance of counsel for the purpose of having counsel present during any further questioning...." *Id.* (citing *Minnick v. Mississippi*, 498 U.S. 146, 153, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990)). But because the request preceded *Miranda* warnings and the inception of interrogation, the court declined to indulge such a presumption. *Id.* (citing *Minnick*, 498 U.S. at 153, 111 S.Ct. 486). Rather, the court scrutinized the nature of petitioner's actual invocation, and concluded that it was "ambiguous as to purpose." *Id.* at 268. A fair reading of the opinion reveals that the ambiguity detected was whether petitioner "wanted advice from counsel regarding how to handle the imminent questioning, or whether the [petitioner] wanted counsel present for interroga-

tion...." *Id.* at 267–68. The police officers therefore were within their rights to "clarify the ambiguity by asking the [petitioner] if ... she wishe[d] to go forward with interrogation." *Id.* at 268 (citing *Davis v. United States,* 512 U.S. 452, 461, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994)). And given petitioner's unambiguous affirmative response to this attempt at clarification, the court found petitioner's subsequent waiver of her *Miranda* rights to be effective. *Id.*

Subsequently, petitioner applied for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The application challenged as clearly unconstitutional the New Hampshire Supreme Court's unwillingness to extend to those in custody and facing imminent interrogation the "irrebuttable presumption" the court appears to have inferred from *Minnick:* that any "request for counsel" made *during* custodial interrogation (as opposed to just prior to interrogation) is for the purpose of invoking the right to counsel's presence during further questioning. *See Grant–Chase,* 140 N.H. at 267, 665 A.2d 380. The district court denied the petition, reasoning that (1) under 28 U.S.C. § 2254(d)(1), it was prohibited from granting the writ unless the challenged state ruling was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; and (2) the United States

Supreme Court has never explicitly or implicitly endorsed application of such a presumption to situations preceding the commencement of custodial interrogation. The court did, however, issue petitioner a COA as to this issue pursuant to 28 U.S.C. § 2253(c).

In accordance with 1st Cir. R. 22.1(c),[1] an interim rule adopted in 1996 in the wake of the AEDPA's amendments to 28 U.S.C. § 2253(c) and Fed. R.App. P. 22(b), petitioner then asked this court to grant her a second COA with respect to the *Miranda* issue. Noting that other circuits have determined that litigants who have obtained a COA on one or more issues from a district judge may proceed with their appeals of those issues forthwith, we decided to reexamine 1st Cir. R. 22.1(c) and requested that petitioner and respondent file supplemental briefs discussing "whether a petitioner who obtains a[COA] from a district court judge must also obtain one from the court of appeals before the appeal may proceed." We also invited the Federal Defender and the United States Attorney to file *amicus* briefs on this issue. In their helpful supplemental and *amicus* briefs, petitioner, respondent, the Federal Defender, and the United States Attorney all took the view that 1st Cir. R. 22.1(c) is inconsistent with the 1996 amendments to 28 U.S.C. § 2253(c)(1) and Fed. R.App. P. 22(b)[2] insofar as the Rule requires

---

1. In relevant part, the Rule states:

Once the district court grants or denies a certificate of appealability, the petitioner should promptly apply to the court of appeals for issuance of a certificate of appealability. The motion should be accompanied by a copy of the district court's order and a memorandum giving specific and substantial reasons, and not mere generalizations, why a certificate should be granted. Ten days after the district court file has been received in this court, the clerk will present the record to the court, with or without a separate motion for a certificate of appealability, addressed to that court. If no sufficient memorandum has been filed by that time, the certificate may be denied without further consideration. The effect of a denial is to terminate the appeal.

2. 28 U.S.C. § 2253(c)(1) now reads:

Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

Fed. R.App. 22(b) now reads:

In a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court, an appeal by the applicant for the writ may not proceed unless a district or a circuit judge issues a certificate of appealability pursuant to section 2253(c) of title 28, United States Code. If an appeal is taken by the applicant, the district judge who rendered the judgment shall either issue a certificate of appealability or state the reasons why such a certificate should not issue. The certificate or the statement shall be forwarded to the court of appeals with the notice of appeal and the file of the proceedings in the district court. If the district judge has denied the certificate, the applicant for the writ may then request issuance of the certificate by a circuit judge. If such a request is addressed to the court of appeals, it shall be deemed addressed to the judges thereof and shall be considered by a circuit judge or judges as the court deems appropriate. If no express request for a certificate is filed, the no-

litigants in possession of a COA from a district judge to apply for a second certificate from this court. As a result, petitioner, respondent, and *amici* join in urging us to revise 1st Cir. R. 22.1(c) to dispense with this requirement.

## II.

*A. 1st Cir. R. 22.1(c)*

▪ Upon due consideration of the arguments set forth in the supplemental and *amicus* briefs, we agree that 1st Cir. R. 22.1(c) should be revised to eliminate the requirement that litigants in possession of a COA from a district judge as to one or more issues apply for a second COA with respect to those issues from the court of appeals.[3] As an initial matter, we observe that every court of appeals that has considered the question has concluded that a district judge may issue a COA. *See, e.g., Tiedeman v. Benson,* 122 F.3d 518, 522 (8th Cir.1997) (listing seven other court of appeals cases, involving appeals of denials of both 28 U.S.C. § 2254 petitions and 28 U.S.C. § 2255 motions, to similar effect); *see also* 7th Cir. R. 22.1(b). The basis for this unanimous view is well summarized in Judge Carnes' comprehensive opinion in *Hunter v. United States,* 101 F.3d 1565, 1573–84 (11th Cir.1996) *(en banc), cert. denied,* — U.S. ——, 117 S.Ct. 1695, 137 L.Ed.2d 822 (1997), and, in the absence of any suggestion that 1st Cir. R. 22.1(c) improperly countenances the issuance of a COA by a district judge, we see no reason to reinvent the wheel. Suffice it to say that we

endorse the views expressed in *Hunter* and explicitly now hold that a district judge has the authority under the AEDPA to issue a COA under 28 U.S.C. § 2253(c) and Fed. R.App. P. 22(b).[4]

Once such authority is recognized, the superfluity of 1st Cir. R. 22.1(c)'s "second certificate" requirement becomes apparent. Though couched in the negative, 28 U.S.C. § 2253(c) explicitly contemplates the issuance of only one certificate before an appeal to this court may be taken. *See supra* note 2 ("Unless a circuit justice *or* judge issues *a* [COA], an appeal may not be taken to the court of appeals from [a final order denying a 28 U.S.C. § 2254 petition or a 28 U.S.C. § 2255 motion].")(emphases supplied). And Fed. R.App. P. 22(b) even more explicitly recognizes that an appeal may proceed once a litigant has a COA from a district judge. *See id.* ("In a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court, an appeal by the applicant for the writ may not proceed unless a district *or* a circuit judge issues *a* [COA] pursuant to section 2253(c) of title 28, United States Code.")(emphases supplied).

We therefore rule that a COA from a district judge as to an issue is itself sufficient to permit an appeal of the issue in 28 U.S.C. §§ 2254 and 2255 proceedings. In so ruling, we note that the Eleventh Circuit has explicitly reached the same conclusion, *see Hunter,* 101 F.3d at 1576 n. 9 (requiring a second COA from the court of appeals is "inconsis-

tice of appeal shall be deemed to constitute a request addressed to the judges of the court of appeals. If an appeal is taken by a State or its representative, a certificate of appealability is not required.

3. We have followed the procedure outlined in *Gallagher v. Wilton Enter., Inc.,* 962 F.2d 120, 124 n. 4 (1st Cir.1992), and circulated this opinion to all active judges of this court for pre-publication comment on our ruling with respect to 1st Cir. R. 22.1(c). No judge has raised an objection. Nonetheless, this remains a panel opinion; the parties remain free to petition us to rehear and/or to suggest that we rehear *en banc* any issue (including those pertaining to 1st Cir. R. 22.1(c)) raised in this appeal.

4. Although Fed. R.App. 22 is captioned "Habeas Corpus and Section 2255 Proceedings," Fed. R.App. P. 22(b) mysteriously makes explicit refer-

ence only to "habeas ... proceeding[s] in which the detention complained of arises out of process issued by a State court." As a result, at least one court has ruled that district judges have the authority to issue a COA in a 28 U.S.C. § 2254 proceeding, but not in a § 2255 proceeding. *See United States v. Cota–Loaiza,* 936 F.Supp. 756, 760–61 (D.Colo.1996). We decline to adopt this approach for the reasons set forth in *Hunter. See* 101 F.3d at 1575 n. 8 (rejecting the result in *Cota–Loaiza* because it requires a court to conclude that 28 U.S.C. § 2253(c)'s "circuit justice or judge" language means one thing for 28 U.S.C. § 2254 proceedings but something different for § 2255 proceedings, and because it is inconsistent with the legislative history of 28 U.S.C. § 2253).

tent with the plain language" of 28 U.S.C. § 2253(c) and Fed. R.App. P. 22(b)), and that all other courts of appeals that have touched upon the question have at least implicitly followed suit, *see, e.g.,* 7th Cir. R. 22.1(b) (permitting an appeal to proceed upon issuance of a COA by a district judge); *Tiedeman,* 122 F.3d at 522 ("Normally, a[COA] granted by a district judge, if regular on its face and not procedurally defective, would mean that the appeal would proceed in this Court in the ordinary course."); *Houchin v. Zavaras,* 107 F.3d 1465, 1469 (10th Cir.1997) (similar); *Else v. Johnson,* 104 F.3d 82, 83 (5th Cir.1997) (similar). Accordingly, pending revision of 1st Cir. R. 22.1(c), litigants in possession of a COA as to an issue from a district judge need not apply to this court for issuance of a second certificate on that issue; they need only present this court with a copy of the district court order granting a certificate of appealability. *See supra* note 1. Upon such presentation, the appeal shall proceed in this court in the ordinary course.

*B. The Merits*

 Turning to the merits of petitioner's appeal, we detect no error in the district court's denial of her petition. As previously noted, the New Hampshire Supreme Court determined that petitioner's pre-interrogation request to call counsel was "ambiguous as to purpose"—i.e., it was ambiguous as to "whether the [petitioner] wanted advice from counsel regarding how to handle the imminent questioning, or whether the [petitioner] wanted counsel present for interrogation...." *Grant–Chase,* 140 N.H. at 267–68, 665 A.2d 380. The court also determined that when Officer Folini subsequently "asked [petitioner] if it was all right to ask some questions about the incident," *id.* at 266, 665 A.2d 380, he was seeking "to clarify the purpose of her call," *id.* at 268, 665 A.2d 380. Given these determinations (which petitioner does not challenge), we have some difficulty

understanding why the New Hampshire Supreme Court overruled the state trial court's ruling that petitioner did not adequately indicate to the officers that she sought "the assistance of counsel." *Id.* at 267, 665 A.2d 380. After all, the trial court's ruling must, in context, be understood as a determination that petitioner had not actually invoked her right to the assistance of an attorney *in dealing with the forthcoming interrogation.* And the New Hampshire Supreme Court's "ambiguous as to purpose" ruling would seem to evince agreement, rather than disagreement, with this determination.

 In any event, the United States Supreme Court has quite clearly held that the rule of *Miranda* "applies only when the suspect has *expressed* his wish for the particular type of lawyerly assistance that is the subject of *Miranda.*" *McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (citation and internal quotation marks omitted) (emphasis in original); *see also id.* (defining the type of lawyerly assistance that is the subject of *Miranda* as "the right to the assistance of an attorney *in dealing with a custodial interrogation by the police*") (emphasis in original). So too has the Court held that the wish for this type of assistance must be "unambiguously" expressed, meaning "a statement either is ... an assertion of the right to counsel or it is not." *Davis,* 512 U.S. at 459, 114 S.Ct. 2350 (citation and internal quotation marks omitted). Thus, when a suspect has made a statement that might or might not amount to an expression of a wish for the assistance of counsel during interrogation, the police are within their rights not only to clarify whether the suspect wants an attorney present, *see id.* at 461, 114 S.Ct. 2350 (observing that such a clarification "will often be good police practice"), but also simply to continue the interrogation without asking for clarification, *see id.* at 461–62, 114 S.Ct. 2350.[5]

5. We recognize that a request to talk to a lawyer made during custodial interrogation is far less likely to be "ambiguous as to purpose" than a pre-interrogation request such as that made here. Thus, as a matter of *fact,* we concur with the New Hampshire Supreme Court's emphasis on the difference between requests for counsel made during interrogation and requests for counsel

made prior to interrogation. But in light of *McNeil* and, especially, *Davis,* we have some doubt about the correctness of the New Hampshire Supreme Court's suggestion that, if made *during* custodial interrogation, even requests for counsel that are truly ambiguous as to purpose give rise, as a matter of *law,* to an irrebuttable presumption that they are made for the purpose

Here, the New Hampshire Supreme Court determined, and the record confirms, that petitioner's intentions were at first unclear; that Officer Folini asked petitioner to clarify her intentions; that petitioner unambiguously informed the officers that she intended to cooperate with the investigation; that the officers read petitioner her *Miranda* rights; and that petitioner waived those rights. In our view, this scenario falls squarely within the rule of *Davis*. We therefore see no basis for concluding that the admission into evidence of petitioner's subsequent statements was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see O'Brien v. Dubois*, 145 F.3d 16, 20–25 (1st Cir.1998) (interpreting § 2254(d)(1)).

### III.

For the reasons stated, we hold that if a litigant has obtained from a district judge a COA as to one or more issues addressed in the denial of a 28 U.S.C. § 2254 petition or a 28 U.S.C. § 2255 motion, the litigant need not apply for a second COA from this court as to these issues. To the extent that 1st Cir. R. 22.1(c) imposes such a "second certificate" requirement, it should be disregarded. As to the merits of this appeal, we **affirm** the district court's denial of petitioner Cindy GrantChase's application for a writ of habeas corpus under 28 U.S.C. § 2254.

BOWNES, *Senior Circuit Judge* (concurring).

Although I do not quarrel with the majority's intricate analysis of *Miranda*, as interpreted by the Supreme Court, I would decide the case on a simpler basis.

Plaintiff asked and received permission to call her attorney after she arrived at the hospital. She did so, and he told her to cooperate with the police. After she finished talking to her lawyer, the police asked if they could talk to her. She replied that she would do so, stating that her lawyer had told her to

cooperate with the police. Before interrogating her, the police advised her of her rights under *Miranda*. She signed the *Miranda* waiver. I see no *Miranda* problem.

of having counsel present during any further questioning. *See Grant–Chase*, 140 N.H. at 267, 665 A.2d 380. As we read *McNeil* and *Davis*, the police may *always* seek to clarify a suspect's intentions when faced with a truly ambiguous assertion.