# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1330

_____

| | | |
|---|---|---|
| Terrance E. Jackson, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| James A. Gammon, Superintendent, | * | District Court for the |
| Moberly Correctional Center; | * | Western District of Missouri |
| Jeremiah Nixon, Attorney General, | * | |
| State of Missouri, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: September 14, 1999

Filed: October 28, 1999

_____

Before McMILLIAN, FAGG and MURPHY, Circuit Judges.

_____

McMILLIAN, Circuit Judge.

Terrence Jackson (petitioner) appeals from a final order entered in the United States District Court[1] for the Western District of Missouri denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Jackson v. Gammon, No. 96-126-

_____

[1]The Honorable Dean Whipple, United States District Judge for the Western District of Missouri.

CV-W-1 (W.D. Mo. Oct. 23, 1996) (order) (hereinafter "slip op."). For reversal, petitioner argues that the district court erred in denying relief on his claims of ineffective assistance of trial and appellate counsel in light of their failure to challenge the admissibility of certain eyewitness identification testimony. Petitioner additionally argues that, because he filed his § 2254 petition prior to the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), he should not be limited to appealing only those claims for which a certificate of appealability was granted. For the reasons stated below, we affirm the order of the district court.

## Jurisdiction

Jurisdiction was proper in the district court based upon 28 U.S.C. §§ 1331, 2254. Jurisdiction is proper in this court based upon 28 U.S.C. §§ 1291, 2253(a). The notice of appeal was timely filed pursuant to Fed. R. App. P. 4(a).

## Background

On September 13, 1988, at approximately 1:00 a.m., a drive-by shooting occurred at a park at 35th and Wabash in Kansas City, Missouri. As a result of the shooting, one individual died and another was severely injured. Based upon that incident, petitioner was tried before a jury in Missouri state court.

Witnesses for the state testified at petitioner's trial that, on the night in question, they saw a blue van drive slowly past the park while several individuals fired shots through the van's open side door. Eric Dunlap identified petitioner in court and testified that he saw petitioner sitting in the back of the van (around the middle of the van), apparently holding something in his hands, while the shots were being fired. See Trial Transcript, Vol. II, at 216-18. Dunlap testified that he had known petitioner for approximately three years prior to the shooting. See id. at 202-03. Dunlap also testified that, after the shooting occurred, he went to the hospital and then, from there,

went to the police station to give a statement about the shooting. See id. at 222-23. Regarding the events at the police station, Dunlap testified at trial to the following sequence of events. See id. at 224-26.

At the police station, an officer showed Dunlap an array of photographs and asked him to identify the individuals he had seen in the blue van. Dunlap selected one photograph, identifying the individual as Michael Hamilton and stating that Hamilton had been in the van during the shooting. Dunlap indicated that he could not make any other identifications from the photographs. The officer then left the room, telling Dunlap to keep looking at the pictures. While the officer was out of the room, Dunlap looked at the backs of the photographs and saw the names "Terrance Jackson" and "Leroy Hudson" written on two separate photographs. After the officer returned, Dunlap picked out those two photographs, stating that he picked them out because of the names on the backs, even though -- as he testified at trial -- the picture marked "Leroy Hudson" did not look like Leroy Hudson and the picture marked "Terrance Jackson" looked like petitioner "just a little bit." Id. at 226. After being informed that the pictures were not photographs of Terrance Jackson and Leroy Hudson, Dunlap was shown a different photographic array and, this time, selected actual photographs of petitioner and Hudson.

Petitioner's trial counsel did not object to the admission of Dunlap's in-court identification of petitioner or to his testimony about the photographic identification procedures used at the police station. Another witness for the state, Arlvelt Bruster, also identified petitioner, among others, as having been in the back of the blue van at the time of the shooting. Bruster testified that petitioner was sitting in the middle part of the van and appeared to be holding something in his hands while the shots were being fired. See id. at 352-56. After the shooting, Bruster went to the hospital and, from there, went to the police station where he was shown a photographic array. Bruster identified petitioner's photograph as depicting one of the individuals whom he had seen in the blue van at the time of the shooting. See id. 356-60. Bruster testified

-3-

that he had known petitioner approximately three years prior to the shooting. See id. 359.

Petitioner was found guilty on one count of second degree murder, two counts of armed criminal action, and one count of first degree assault. Petitioner was sentenced in Missouri state court to four consecutive life sentences. Petitioner appealed his conviction. Petitioner did not raise, in the direct criminal appeal, a claim of plain error based upon the admission of Dunlap's in-court identification or testimony concerning Dunlap's pretrial photographic identification of petitioner at the police station.

Petitioner also separately filed a motion for post-conviction relief in Missouri state court pursuant to Missouri Supreme Court Rule 29.15. Petitioner's counsel in the Rule 29.15 proceeding argued, among other things, that Dunlap's photographic identification of petitioner was unreliable and that trial counsel had been ineffective in failing to file a pretrial motion to suppress evidence related to that identification or to object during trial to the admission of such evidence, particularly where petitioner's theory of defense was based upon alibi and unreliable identification. See Appellant's Appendix, Vol. I, at 94-95 (transcript of hearing on Rule 29.15 motion). The state court denied petitioner's motion for post-conviction relief on the ground that prejudice had not been demonstrated. See id. at 44-45 (unpublished state court order denying post-conviction relief). Petitioner appealed the denial of his motion for post-conviction relief.

The state court of appeals consolidated petitioner's two appeals – the direct appeal from his conviction and his appeal from the denial of post-conviction relief. Both state court judgments were summarily affirmed. See State v. Jackson, 834 S.W.2d 802 (Mo. Ct. App. 1992).

Petitioner, represented by his present counsel, filed a petition for writ of habeas corpus in federal district court on January 30, 1996.[2] Petitioner asserted, among other things, that he was denied due process and received ineffective assistance of counsel because of his appellate counsel's failure to challenge the admission of Dunlap's eyewitness identification testimony, which had been obtained through unconstitutionally suggestive means.[3] The district court construed these assertions as "claim[ing] that the state court allowed, and Petitioner's trial and appellate counsel

---

[2]The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective on April 24, 1996.

[3]The petition stated this claim for relief as follows:

> Petitioner Was Denied Due Process and the Effective Assistance of Counsel When Appellate Counsel Failed to Challenge the Admission of Eyewitness Identification Testimony That Was Obtained Through Unconstitutionally Suggestive Means; The Admission of the Testimony Should Have Been Challenged on the Basis of Plain Error and Through a Claim of Ineffective Assistance of Counsel.

Appellant's Appendix, Vol. II, at 233-34 (Petition for Writ of Habeas Corpus at 28-29 (filed Jan. 30, 1996)). In responding to an order of the district court to show cause why the petition should not be granted, respondents interpreted the above-quoted claim as setting forth the following two separate grounds for relief:

> 6. Ineffective Assistance of Direct Appeal Counsel: Direct appeal counsel failed to allege that it was plain error to admit the eyewitness identification testimony by Mr. Dunlap.

> 7. Ineffective Assistance of Counsel on Appeal of the Denial of the Post-Conviction Motion: Post-conviction appellate counsel failed to allege trial counsel was ineffective for not moving to suppress the eyewitness identification.

Id. at 245 (Response to Order to Show Cause at 3).

should have objected to, the admission of improper eyewitness identification testimony." Slip op. at 6. In addressing these grounds for relief, the district court stated: "[f]or the sake of judicial economy, the Court proceeds to the merits without regard to the procedural posture." Id. at 7.[4] The district court considered whether the photographic identification procedures used at the police station were so suggestive as to render the subsequent admission of Dunlap's identification testimony at trial a violation of petitioner's right to due process under the standard set forth in Trevino v. Dahm, 2 F.3d 829, 833 (8th Cir. 1993). See slip op. at 6.

The district court opined that the question of whether the photographic identification procedures actually prejudiced petitioner "could go either way." Id. at 7. However, based upon the totality of the circumstances – including Dunlap's familiarity with petitioner prior to the shooting, the fact that the van was moving slowly with the side door open, and Dunlap's "high degree of attention during the crime" – the district court concluded that Dunlap's in-court identification was reliable despite any suggestive or inappropriate pretrial identification procedures used at the police station. Id. at 7-8.

The district court denied relief under 28 U.S.C. § 2254 on "all grounds presented," id. at 10, and entered judgment for respondents on October 23, 1996. Petitioner filed a timely notice of appeal from the judgment.[5]

---

[4]We, too, dispose of the present case on the merits of petitioner's constitutional claims without regard to any procedural default issues that could have been raised by the state.

[5]By motion and amended motion filed on November 1, 1996, and November 25, 1996, respectively, petitioner moved pursuant to Fed. R. Civ. P 59(e) to alter or amend the judgment denying the petition for a writ of habeas corpus. The Rule 59(e) motion was denied by an order of the district court dated December 1, 1997. However, the district court inadvertently failed to notify some or all of the parties of its order denying petitioner's Rule 59(e) motion. Upon realizing the oversight several months later, the

Petitioner thereafter filed an application for a certificate of appealability in the district court. The district court granted the application "on the issue of whether [petitioner's] appellate counsel was ineffective in failing to object to the admission of the eyewitness identification testimony at trial," and denied it "as to all other issues." Jackson v. Gammon, No. 96-0126-CV-W-1 (W.D. Mo. Dec. 30, 1998) (order granting in part and denying in part application for certificate of appealability). Petitioner then filed a notice of appeal from the partial denial of the application for a certificate of appealability and also applied for a broader certificate of appealability from this court. This court entered an order stating that "[t]he appeal will proceed on the issues on which the District Court granted the certificate." Id., No. 99-1330 (8th Cir. Mar. 9, 1999) (order issued by the Clerk for the Eighth Circuit at the direction of the Court).

**Discussion**

Certificate of appealability requirement

As a preliminary matter, we address petitioner's argument that he should be permitted to raise on appeal claims for which no certificate of appealability was granted. He argues that he should not be bound by the certificate of appealability requirement in 28 U.S.C. § 2253(c) because he filed his § 2254 petition in the district court "well before the recent amendments to the Antiterrorism and Effective Death Penalty Act (AEDPA), which imposed new requirements on the right to appeal." Brief for Appellant at 18. He acknowledges that, under Tiedeman v. Benson, 122 F.3d 518 (8th Cir. 1997), the law in this circuit is that a certificate of appealability is now required for all § 2254 appeals to proceed, regardless of when the petition was originally filed. He contends, however, that Tiedeman was wrongly decided under

district court amended the order of December 1, 1997, to reflect a date of July 8, 1998. See Jackson v. Gammon, No. 96-0126-CV-W-1 (W.D. Mo. July 8, 1998) (amended order). Petitioner's notice of appeal was filed on July 14, 1998.

Lindh v. Murphy, 521 U.S. 320 (1997), and should be overruled by this court *en banc*. He maintains that every other circuit that has addressed this AEDPA retroactivity issue has decided it contrary to the holding in Tiedeman. See Brief for Appellant at 21& n.4 (citing cases from the First, Second, Third, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, and D.C. Circuits). In fact, he points out, one circuit has specifically criticized the Eighth Circuit's rationale in Tiedeman as fundamentally flawed. Id. at 19-24 (citing United States v. Skandier, 125 F.3d 178, 182 (3d Cir. 1997)).

We are bound by our court's prior decision in Tiedeman, which now requires petitioner to meet the certificate of appealability requirements set forth in 28 U.S.C. § 2253(c). In the absence of a Supreme Court decision or an *en banc* decision from this court overruling Tiedeman, we lack jurisdiction to consider the merits of petitioner's claims for relief other than his ineffective assistance of counsel claims related to the admission of Dunlap's eyewitness identification testimony.

Ineffective assistance of counsel

Petitioner interprets the district court's order granting the certificate of appealability as allowing him to argue the ineffectiveness of both his trial counsel and his appellate counsel in the underlying criminal matter. Because the district court's order granting the certificate of appealability is ambiguous in this respect, we review both ineffective assistance claims advanced by petitioner.

"'In determining whether to grant habeas relief, we review the district court's conclusions of law *de novo* and its findings of fact for clear error.'" Harris v. Bowersox, 184 F.3d 744, 748 (8th Cir. 1999) (quoting Bounds v. Delo, 151 F.3d 1116,

1118 (8th Cir. 1998)). The state courts' factual findings are entitled to a presumption of correctness. Id.[6]

> An ineffective assistance of counsel claim presents a mixed question of law and fact. . . . "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result." [The petitioner] must show that counsel's performance was deficient and prejudiced his defense. . . . Once deficient performance has been established, petitioner must demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."

Kellogg v. Skon, 176 F.3d 447, 452 (8th Cir. 1999) (citations omitted).

Petitioner argues that his trial counsel's performance was deficient because counsel failed to move to suppress Dunlap's eyewitness identification testimony and all references to Dunlap's pretrial photographic identification and further failed to object to such evidence at trial. Petitioner argues that his appellate counsel's performance was deficient because counsel failed to argue that the admission of Dunlap's eyewitness identification testimony was plain error. Petitioner maintains that he has shown *prejudice* at both levels because there is a reasonable probability that (a) Dunlap's eyewitness identification testimony would have been excluded if the issue had been

---

[6]Because petitioner filed his habeas petition before the effective date of the AEDPA, we review state court findings of fact under the pre-AEDPA standard, which entitles such findings to a presumption of correctness. See Bounds v. Delo, 151 F.3d 1116, 1118 n.3 (8th Cir. 1998) (cited in Harris v. Bowersox, 184 F.3d 744, 748 (8th Cir. 1999)).

properly raised in the trial court and (b) the admission of that testimony would have been deemed plain error if the issue had been properly raised on appeal. We disagree.

As indicated above, in order to establish a constitutional basis for habeas relief, petitioner must show prejudice under the standards of Strickland v. Washington, 466 U.S. 668 (1984) (cited in Kellogg v. Skon, 176 F.3d at 451). To do that in the present case, petitioner must demonstrate that the admission of Dunlap's eyewitness identification testimony resulted in a deprivation of his due process rights and, therefore, it is reasonably probable that, but for his counsel's failure to challenge that evidence, the result of the proceedings would have been different.

> A conviction based on eyewitness identification at trial will be set aside only when pretrial identification procedures were so impermissibly suggestive that they give rise to a very substantial likelihood of irreparable harm. The central question is whether, under the totality of the circumstances, the identification was reliable despite any suggestive or inappropriate pre-trial identification techniques. The factors to consider in evaluating the likelihood of misidentification include: the opportunity a witness has to view the criminal at the time of the crime; the witness's degree of attention; the accuracy of the witness's prior description of the criminal; the level of certainty demonstrated by the witness at the confrontation; and the length of time between the crime and the confrontation.

Trevino v. Dahm, 2 F.3d at 833 (footnote and citations omitted).

Upon review of the district court's findings of fact and conclusions of law, we hold that the district court did not clearly err in finding that Dunlap knew petitioner prior to the shooting, the blue van had been moving slowly with the door open, and the circumstances were such that Dunlap would have paid close attention to the events around him. See slip op. at 7-8. We agree with the district court's conclusion that Dunlap's in-court identification was reliable under the totality of the circumstances

despite any suggestive or inappropriate pretrial identification procedures. Thus, upon *de novo* review, we hold that no due process violation occurred as a result of Dunlap's in-court identification of petitioner or his testimony regarding the pretrial photographic identification procedures used at the police station. Accordingly, petitioner suffered no prejudice as a result of either his trial counsel's or his appellate counsel's failure to challenge the admission of Dunlap's eyewitness identification testimony. Petitioner's ineffective assistance claims fail as a matter of law.

## Conclusion

For the reasons stated, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-