DENNIS JACOBS, Chief Judge,
dissenting:
When, after Miranda warnings, a suspect is undecided as to whether a lawyer is wanted, or responds ambiguously, the police may renew that inquiry. See United States v. Ramirez, 79 F.3d 298, 304 (2d Cir.1996) (“[W]here a suspect has invoked his right equivocally or ambiguously, the officers are permitted to ask narrow questions only for the purpose of clarifying the ambiguity.”). The issue on this appeal is whether the police are barred from renewing the inquiry if the suspect who says he is undecided also refuses to sign a written waiver of Miranda rights. The majority holds that such a refusal to sign a written waiver operates as an invocation of Miranda rights and thus precludes any further inquiry by police to resolve the uncertainty. However, because the refusal to sign a waiver is wholly consistent with the expression of uncertainty, I respectfully dissent.
I
When the government appeals from the suppression of evidence, we review the district court’s factual findings for clear error, viewing the evidence in the light most favorable to the government. United States v. Rodriguez, 356 F.3d 254, 257 (2d Cir.2004). Given that standard, the facts are as follows:
After the FBI agents arrested Plugh, the agents read him his Miranda rights, asked him to sign a written waiver, and inquired orally whether he was willing to waive. Plugh said he was not sure whether he wanted to talk to the agents, and said he did not know whether he needed a lawyer. He was certain, however, that he did not want to sign the waiver form, and the agents recorded his refusal to sign.
On the hour-long trip to the federal building in Rochester, the agents told Plugh that while they “didn’t care” whether he talked to them, they would relay any cooperation to the prosecutor. Plugh asked what cooperation meant, but the agents told Plugh that they could make no promises, that Plugh should say nothing to them about his case, and that they would only discuss the case if Plugh explicitly waived after again being read his rights. The agents asked no substantive questions during the drive to Rochester.
On arrival in Rochester, the agents told Plugh that they were going to transfer him to the custody of the United States Marshals and that if he wanted to make a statement, the time had come to do so. Thereupon, Plugh said that he would make a statement; the agents again gave Miranda warnings; Plugh signed a written waiver of his rights; and the inculpatory statement at issue was made.
II
Police may not use statements made by a suspect under custodial interrogation unless the suspect is apprised of his Fifth Amendment rights, and waives them knowingly, intelligently, and voluntarily. Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If he invokes his right to counsel, police must cease questioning until the suspect has an attorney present. Miranda, 384 U.S. at 474, 86 S.Ct. 1602; Edwards v. Arizona, 451 U.S. 477, 485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). If he waives, police may go ahead with questioning. Davis v. United States, 512 U.S. 452, 458, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).
Did Plugh’s refusal to sign a waiver constitute an invocation of his rights notwithstanding his simultaneous oral state *146 ment that he didn’t yet know whether he wanted a lawyer or whether he should talk to the agents? To effectively invoke the right, a suspect “must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.” Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). This inquiry — whether a suspect has in fact invoked his rights — is an objective one that takes into account all of the circumstances. Id. at 458-59, 114 S.Ct. 2350.
Plugh’s oral statements to the agents at the time of the arrest — “I am not sure if I should be talking to you” and “I don’t know if I need a lawyer” — were equivocal, rendering his decision ambiguous.[1] If the record showed no more than these statements, the case would be straightforward; Plugh would lose. The only wrinkle is that (simultaneously) Plugh refused to sign a written waiver of his rights.
Davis instructs that courts must look to all of the circumstances surrounding a purported invocation to determine whether it was unambiguous. Davis, 512 U.S. at 458-59, 114 S.Ct. 2350. All of the circumstances here — Plugh’s oral statements as well as his refusal to sign a waiver — bespeak indecision and ambiguity.
When a suspect makes ambiguous statements regarding his right to silence, we have held that the police may ask no questions other than to clarify whether the suspect in fact wishes to invoke, or to waive, or to stay on the fence. Ramirez, 79 F.3d at 304. Ramirez (a right-to-silence case that pre-dated Davis) was thus more restrictive than Davis (a right-to-counsel case), which specifically declined to limit police to clarifying questions in such circumstances.[2] Davis 512 U.S. at 461-62, 114 S.Ct. 2350.
If, as the majority opinion seems to suggest, the agents categorically violated the Ramirez rule by telling Plugh that his cooperation would be relayed to the prosecutor and that “this was the point” to talk, then suppression is justified on that basis alone. Maj. Op at 139 n. 4, 142 n. 11, 144-45. But if that were so, suppression would be warranted regardless of whether Plugh’s statements were ambiguous, in which ease all the rest of the majority opinion would be unnecessary. But the majority opinion is not superfluous, because — even if the Ramirez rule survives Davis — the agents did limit themselves to clarification.
The majority cites the following cases to suggest that the sorts of statements the *147 agents made here constitute inappropriate interrogation in violation of the Ramirez rule: United States v. Montana, 958 F.2d 516, 518 (2d Cir.1992) (statement informing the defendants that any cooperation would be brought to the attention of the prosecutor); Campaneria v. Reid, 891 F.2d 1014, 1021 (2d Cir.1989) (statement suggesting that “now is the time” for suspect to talk to police). But these cases— unlike Ramirez — involve statements made by police officers after the suspect had unambiguously invoked his rights. In such cases, statements such as these serve only to badger the suspect to change his mind. See Campaneria, 891 F.2d at 1021 (since “[n]othing was ambiguous or equivocal” about suspect’s invocation, officer’s remark “was not aimed at resolving any ambiguity in [suspect’s] statement, but rather at changing his mind”). But if a suspect has not clearly invoked his rights, then an offer to relay his cooperation to the prosecutor and words of encouragement to make up his mind serve primarily to clarify his initial ambiguous statement. The agents’ conduct was accordingly free of any misconduct or error. For these reasons, I would admit Plugh’s incriminating statement.
Ill
The majority opinion holds that the ambiguity of Plugh’s statements was dispelled by his refusal to sign the written waiver— which is said to be his final answer to the question whether he wished to waive his Miranda rights. Maj. Op at 142. This is odd, because a refusal to sign is fully as consistent with uncertainty as with rejection. But the majority opinion suggests that the question is controlled by our decision in United States v. Quiroz, 13 F.3d 505 (2d Cir.1993). In Quiroz, the suspect said he would not sign the waiver (or anything) without talking to a lawyer. Id. at 509. We held that Quiroz thus invoked the rights listed in the waiver. Id. at 512. We could “see no good reason not to treat Quiroz’s refusal to sign forms in the absence of counsel as a refusal that was coextensive with” the written waiver. Quiroz, Id. at 512 (emphasis added).
Quiroz is therefore one of those cases holding that, if a suspect both refuses to sign a waiver and indicates (either orally or by silence) that he does not wish to answer questions, his response constitutes an invocation of Miranda rights. See United States v. Heldt, 745 F.2d 1275, 1277 & n. 3 (9th Cir.1984) (valid invocation where the suspect refused to sign a waiver and told the officer he did not want to waive his rights or answer questions); United States v. Christian, 571 F.2d 64, 69 (1st Cir.1978) (valid invocation where the suspect refused to sign a waiver but did sign a statement of rights).
By the same token, a suspect who refuses to sign a waiver, but nevertheless acts in a manner inconsistent with invocation of his rights, has signified an implicit waiver. See United States v. House, 939 F.2d 659, 662-63 (8th Cir.1991) (suspect’s decision to answer questions after refusing to sign a 'written waiver constituted an implicit waiver, rather than an invocation, of his Miranda rights); United States v. Boon San Chong, 829 F.2d 1572, 1574 (11th Cir.1987) (suspect’s decision to answer certain questions after reading an advice of rights form constituted a waiver of his Miranda rights, notwithstanding his refusal to sign a written waiver).
Taken together, these cases support the overall principle that the circumstances matter, and that refusal to sign a waiver form is a sign that is informed by context. The majority opinion is therefore a departure, holding as it does that a suspect’s refusal to sign a written waiver constitutes an invocation of rights regardless of anything else the suspect may say or do. However, “[a] refusal to sign a waiver may *148 indicate nothing more than a reluctance to put pen to paper under the circumstances of custody.” Goodwin v. Johnson, 224 F.3d 450, 456 (5th Cir.2000) (quoting United States v. McDaniel, 463 F.2d 129, 135 (5th Cir.1972)).
If a suspect’s refusal to sign a written waiver can be enough to bar police from asking any further questions, regardless of whether the suspect is willing to talk to police, then police will simply stop using written waiver forms. Why take the risk that a suspect won’t want to put pen to paper? The result will be a return to the very confusion and uncertainty regarding a suspect’s invocation of rights that written waivers were designed to overcome. Nothing in Quiroz compels such a result.
IV
The majority opinion creates a second novelty in the law: that Miranda rights can be invoked ambiguously. This conflicts with Davis, which holds that a suspect “must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney,” and that “[i]f the statement fails to meet the requisite level of clarity, Edwards does not require that the officers stop questioning the suspect.” Davis, 512 U.S. at 458, 114 S.Ct. 2350.
The majority distinguishes Davis on the ground that it involved a re-invocation— that is, a suspect’s invocation following his initial waiver. Davis did involve a re-invocation, but the Supreme Court did not limit Davis to its facts or context. The majority quotes some language in Davis (Maj. Op at 143) as “implying that [Davis’] application is limited to situations in which a custodial officer has already begun interrogation after a valid waiver.” I read the cited language to reflect the reality that police often begin to question a suspect before the circumstances warrant a Miranda warning. Davis applies, as Davis says, “at any time during the interview.” Davis, 512 U.S. at 458, 114 S.Ct. 2350; see also McNeil v. Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (the Edwards prophylactic rule “requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police” (emphasis omitted)); Smith v. Illinois, 469 U.S. 91, 94-95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) (application of the Edwards prophylactic rule requires a court to “determine whether the accused actually invoked his right to counsel” (emphasis added)).
A Ninth Circuit panel has suggested that Davis is limited to post-waiver cases. United States v. Rodriguez, 518 F.3d 1072, 1078-79 (9th Cir.2008) (“[T]he ‘clear statement’ rule of Davis addresses only the scope of invocations of Miranda rights in a post-waiver context.”). But a majority of the circuits have applied Davis in prewaiver cases. See United States v. Johnson, 400 F.3d 187, 194-95 (4th Cir.2005) (applying Davis to a pre-waiver statement); United States v. Lee, 413 F.3d 622, 626 (7th Cir.2005) (same); United States v. Brown, 287 F.3d 965, 972-73 (10th Cir.2002) (same); United States v. Syslo, 303 F.3d 860, 866 (8th Cir.2002) (same); United States v. Suarez, 263 F.3d 468, 482-83 (6th Cir.2001) (same); Grant-Chase v. Comm’r, New Hampshire Dep’t of Corr., 145 F.3d 431, 436 & n. 5 (1st Cir.1998) (same); United States v. Posadar-Rios, 158 F.3d 832, 867 (5th Cir.1998) (same).
“The fundamental purpose of the [Supreme Court’s] decision in Miranda was ‘to assure that the individual’s right to choose between speech and silence remains unfettered throughout the interrogation process.’ ” Connecticut v. Barrett, 479 U.S. 523, 528, 107 S.Ct. 828, 93 L.Ed.2d 920 *149 (1987) (emphasis added) (quoting Miranda, 384 U.S. at 469, 86 S.Ct. 1602). Once Miranda warnings are given, the law has no preference as between invocation and waiver. “Once warned, the suspect is free to exercise his own volition in deciding whether or not to make a statement to the authorities.” Oregon v. Elstad, 470 U.S. 298, 308, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) (emphasis added). In short, it is the suspect’s choice — and therefore his initiative — to invoke his rights. We must “presume that a defendant did not waive his rights” absent evidence to the contrary, North Carolina v. Butler, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979); but if the government can prove that the defendant did not make that choice “sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be” an invocation, Davis, 512 U.S. at 458, 114 S.Ct. 2350, neither Miranda nor its progeny require the suppression of any subsequent statements.
I would reverse.

. Examples of ambiguous statements abound. See Davis, 512 U.S. at 462, 114 S.Ct 2350 ("Maybe I should talk to a lawyer”); Burket v. Angelone, 208 F.3d 172, 198 (4th Cir.2000) ("I think I need a lawyer.”); United States v. Zamora, 222 F.3d 756, 765-66 (10th Cir.2000) ("I might want to talk to an attorney.”); Mueller v. Angelone, 181 F.3d 557, 573-74 (4th Cir.1999) ("Do you think I need an attorney here?”); Coleman v. Singletary, 30 F.3d 1420, 1424-25 (11th Cir.1994) (in response to an offer to have a public defender present, "I don't know”); Ledbetter v. Edwards, 35 F.3d 1062, 1069-70 (6th Cir.1994) ("it would be nice” to have an attorney); United States v. Fouche, 776 F.2d 1398, 1405 (9th Cir.1985) ("I might want to talk to a lawyer”).

. The majority suggests that Davis's refusal to limit police makes sense because Davis (they contend) applies only to re-invocations, when a suspect must state his desire unambiguously. As discussed infra in Part III, Davis is not limited to re-invocation cases, but instead applies to any invocation of Miranda rights. In any case, the very intricacy of the majority’s argument is self-refuting: the purpose of the suppression rule is to keep the police honest, a project that requires that the doctrines governing police conduct be accessible to persons other than professors of constitutional law.